1  STEPHEN YOUNGERMAN
   (SBN 98784)
2  DAVID A. ROBINSON
   (SBN 161103)
3  sy@ymlaw.net; dar@ymlaw.net
   YOUNGERMAN & McNUTT LLP
4  11150 West Olympic Boulevard, Suite 900
   Los Angeles, CA  90064
5  Tel.:  (310) 478-3780; Fax:  (310) 478-3831

6  JOHN MARGIOTTA (*admitted pro hac vice*)
   ANNA P. LEIPSIC (*admitted pro hac vice*)
7  JENNIFER INSLEY-PRUITT (*admitted pro hac vice*)
   jm@fzlz.com; aleipsic@fzlz.com; jinsley-pruitt@fzlz.com
8  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   866 United Nations Plaza
9  New York, NY  10017
   Tel.:  (212) 813-5900; Fax:  (212) 813-5901

10
   Attorneys for Defendants LVMH MOET HENNESSY LOUIS VUITTON, INC.
11 and LVMH WATCH & JEWELRY USA, INC. and Defendant and Counter-
   Claimant HUBLOT OF AMERICA

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14

15  SOLID 21, INC.,                      )  Case No.: CV11-0468 DMG (JCx)
                                         )
16             Plaintiff,                )  *[Assigned to Judge Dolly M. Gee in*
                                         )  *Courtroom 7]*
17      vs.                              )
                                         )  **MEMORANDUM OF POINTS AND**
18  HUBLOT OF AMERICA, *et al.*,         )  **AUTHORITIES IN SUPPORT OF**
                                         )  **DEFENDANTS LVMH MOET**
19             Defendants.               )  **HENNESSY LOUIS VUITTON, INC.**
                                         )  **AND LVMH WATCH & JEWELRY**
20  HUBLOT OF AMERICA,                   )  **USA, INC. AND DEFENDANT AND**
                                         )  **COUNTER-CLAIMANT HUBLOT**
21             Counter-Claimant,         )  **OF AMERICA'S MOTION FOR**
                                         )  **SUMMARY JUDGMENT**
22      vs.                              )
                                         )  Date:  February 28, 2014
23  SOLID 21, INC.,                      )  Time:  2:00 p.m.
                                         )  Courtroom 7
24             Counter-Defendant.        )
                                         )  Complaint Filed: January 14, 2011
25                                          Trial Date: July 8, 2014

26

27

28

{F1347876.8 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF FACTS ..............................................................2

I.    Historic and Current Use of the Term "Red Gold" ..........................3

      A.    Historical Use of the Term "Red Gold" ...................................4

      B.    Modern Use of the Term "Red Gold"......................................5

            1. Generic Use of "Red Gold" by Gold Refiners and Suppliers...............6

            2. Generic Use of "Red Gold" in the Jewelry and Watch Industry ..........6

            3. Generic Use of "Red Gold" in the Media ................................8

II.   Plaintiff's Alleged Trademark  ...............................................9

III.  The Parties' Claims.............................................................10

PROCEDURAL HISTORY AND PARALLEL LAWSUITS ................................10

ARGUMENT ..............................................................................12

I.    LEGAL STANDARD...............................................................12

II.   PLAINTIFF'S ALLEGED TRADEMARK IS INVALID.............................13

      A.    "Red Gold" Is the Generic Name of a Gold Alloy and
            Is Not a Protectable Mark for Jewelry or Watches..................................14

      B.    Plaintiff's Trademark Registration Does Not Preclude
            a Finding That "Red Gold" Is Generic ....................................16

      C.    The Evidence Shows That "Red Gold" Is Generic.................................18

            1. Dictionary Definitions Show That "Red Gold" Is Generic ...............19

            2. Use of the Term in the Jewelry and Watch Industry Shows That "Red
            Gold" Is Generic...................................................................19

            3. Use of the Term in the Media Shows That "Red Gold" Is Generic....20

4. "Red Gold" Is Generic Because a Monopoly over the Term Would Prevent Others in the Jewelry and Watch Industry from Calling Their Products What They Are ..............................................................21

III.   SUMMARY JUDGMENT SHOULD BE GRANTED TO HUBLOT OF AMERICA ON ITS COUNTERCLAIMS .......................22

CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

## Cases

*AMF Inc. v. Sleekcraft Boats,*
　　599 F.2d 341 (9th Cir. 1979) ..............................................14

*Advertise.com, Inc. v. AOL Advertising, Inc.,*
　　616 F.3d 974 (9th Cir. 2010) ..............................................14

*American Express Co. v. Mastercard International Inc.,*
　　685 F. Supp. 76 (S.D.N.Y. 1988) ......................................16

*Anderson v. Liberty Lobby, Inc.,*
　　477 U.S. 242 (1986) ...........................................................12

*Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.,*
　　684 F.2d 1316 (9th Cir. 1982) ...........................................23

*CG Roxane L.L.C. v. Fiji Water Co.,*
　　569 F. Supp. 2d 1019 (C.D. Cal. 2008) ............................13

*Carter-Wallace, Inc. v. Procter and Gamble Co.,*
　　434 F.2d 794 (9th Cir. 1970) .............................................17

*Celotex Corp. v. Catrett,*
　　477 U.S. 317 (1986) ...........................................................13

*Classic Foods International Corp. v. Kettle Foods, Inc.,*
　　468 F. Supp. 2d 1181 (C.D. Cal. 2007) ...............16, 18, 20

*Closed Loop Marketing, Inc. v. Closed Loop Marketing, L.L.C.,*
　　589 F. Supp. 2d 1211 (E.D. Cal. 2008) ............................18

*Colt Defense L.L.C. v. Bushmaster Firearms, Inc.,*
　　486 F.3d 701 (1st Cir. 2007).............................17, 20, 23

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,*
　　198 F.3d 1143 (9th Cir. 1999) ......................................18, 19

*Ford Motor Co. v. Ultra Coachbuilders, Inc.,*
　　57 U.S.P.Q. 2d 1356 (C.D. Cal. 2000) .............................13

*Genesee Brewing Co. v. Stroh Brewing Co.,*
　　124 F.3d 137 (2d Cir. 1997) ..............................................16

*Glassysbaby, L.L.C. v. Provide Gifts, Inc.*,
   102 U.S.P.Q.2d 1155 (W.D. Wash. 2011) ........................................17

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ........................................................23

*HMH Publishing Co. v. Lambert*,
   482 F.2d 595 (9th Cir. 1973) ..........................................................13

*Japan Telecom, Inc. v. Japan Telecom America Inc.*,
   287 F.3d 866 (9th Cir. 2002) ..........................................................13

*Levi Strauss and Co. v. Abercrombie and Fitch Trading Co.*,
   633 F.3d 1158 (9th Cir. 2011) ........................................................13

*Liquid Controls Corp. v. Liquid Control Corp.*,
   802 F.2d 934 (7th Cir. 1986) ....................................................17, 20

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003) ..........................................13

*Mattel, Inc. v. Walking Mountain Productions*,
   353 F.3d 792 (9th Cir. 2003) ..........................................................14

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
   561 F.2d 75 (7th Cir. 1977) ..............................................16, 18, 22

*Nartron Corp. v. STMicroelectronics, Inc.*,
   305 F.3d 397 (6th Cir. 2002) ....................................................16, 20

*New Kids on the Block v. News America Publishing, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ..........................................................14

*New West Corp. v. NYM Co. of California, Inc.*,
   595 F.2d 1194 (9th Cir. 1979) ........................................................13

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
   55 F. Supp. 2d 1070 (C.D. Cal. 1999) ............................................14

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
   327 F. App'x 723 (9th Cir. 2009)....................................................15

*Retail Services Inc. v. Freebies Publishing*,
   364 F.3d 535 (4th Cir. 2003) ..............................................16, 17, 20

*Rhoades v. Avon Products, Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ........................................................22

MEMORANDUM OF P&A IN SUPPORT OF DEFENDANTS
AND COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

*Rudolph International, Inc. v. Realys, Inc.,*
    482 F.3d 1195 (9th Cir. 2007) ....................................................... *passim*

*Schwan's IP, L.L.C. v. Kraft Pizza Co.,*
    460 F.3d 971 (8th Cir. 2006) ...................................................16

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
    59 F.3d 902 (9th Cir. 1995) ....................................................15

*Solid 21, Inc. v. Breitling USA, Inc.,*
    11-CV-0457 (GAF)(PLAx), 2011 WL 2938209,
    (C.D. Cal. July 19, 2011)....................................................11, 15

*Solid 21, Inc. v. Breitling USA, Inc.,*
    512 F. App'x 685 (9th Cir. 2013)............................................ *passim*

*Star-Kist Foods, Inc. v. P.J. Rhodes and Co.,*
    735 F.2d 346 (9th Cir. 1984) ....................................................23

*Surfvivor Media, Inc. v. Survivor Productions,*
    406 F.3d 625 (9th Cir. 2005) ....................................................12

*Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,*
    601 F.2d 1011 (9th Cir. 1979) ................................................. *passim*

*Sykes Laboratory, Inc. v. Kalvin,*
    610 F. Supp. 849 (C.D. Cal. 1985) ............................................23

*Visa International Service Association v. JSL Corp.,*
    610 F.3d 1088 (9th Cir. 2010) ................................................13

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
    419 F.3d 925 (9th Cir. 2005) ....................................................14

**STATUTES**

15 U.S.C. § 1064 ....................................................................9, 17

15 U.S.C. § 1065 ....................................................................9, 17

15 U.S.C. § 1114 ......................................................................13

15 U.S.C. § 1119 ......................................................................23

15 U.S.C. § 1125 ......................................................................13

28 U.S.C. § 2201 ......................................................................22

MEMORANDUM OF P&A IN SUPPORT OF DEFENDANTS
AND COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

Cal. Bus. & Prof. Code § 14200 ............................................................... 13

Cal. Bus. & Prof. Code § 17200 *et seq* ................................................... 13

**RULES**

Fed. R. Civ. P. 12 .................................................................................. 11

Fed. R. Civ. P. 56 .............................................................................. 1, 12

Pursuant to Federal Rule of Civil Procedure 56(a), Defendants LVMH Moet Hennessy Louis Vuitton, Inc. and LVMH Watch & Jewelry USA, Inc. and Defendant and Counter-Claimant Hublot of America (collectively, "Defendants") submit this memorandum in support of their motion for summary judgment on all the claims of plaintiff Solid 21, Inc. ("Plaintiff") and on Counter-Claimant Hublot of America's counterclaims against Plaintiff.

## PRELIMINARY STATEMENT

Plaintiff originally filed this trademark action in September of 2010, and it filed it against nineteen watch brands, including some of the most recognizable names in watchmaking, such as Rolex, Bulgari, Blancpain, Omega, Ulysse Nardin and Hublot. Plaintiff claimed that each of these nineteen different brands was infringing Plaintiff's allegedly exclusive rights to use the term "red gold" and to sell jewelry that is a particular, though ill-defined, shade of red.

The problem with Plaintiff's claims was evident from the beginning. As shown by the abundance of original defendants, the term "red gold" is used throughout the jewelry and watch industry: it is not a brand name or trademark, but the name of a type of gold that is reddish in color. The coloring results from the ingredients used to make it, namely, pure gold, which is yellow, and copper, which is reddish brown. In fact, the evidence will show that the term red gold is and always has been a generic designation for jewelry items made of a high-copper-content gold alloy, and that the nineteen original defendants are only a small sampling of the companies that have used and are using the designation. If Plaintiff were granted an exclusive right to use the term "red gold," the economic consequences would be devastating to the jewelry industry as this would grant to Plaintiff a monopoly on a generic term long used to identify jewelry and watches made of a high-copper-content alloy. Such a naked grab for an economic monopoly cannot be allowed and is not consistent with the trademark laws of the United States.

1  "Red gold" is used by jewelers and watchmakers, gold suppliers and
2  refiners, retailers, the fashion press and consumers in the same way as they use the
3  terms "yellow gold" and "white gold"—to refer to a type of gold alloy and
4  products made from it.  Dozens of reference guides for jewelers and watchmakers,
5  newspaper and magazine articles, gold suppliers' product lists and other sources
6  submitted in support of this motion show that "red gold" has been commonly used
7  as a generic name for more than a century.  The fact that Plaintiff owns a
8  trademark registration with the United States Patent and Trademark Office is of
9  little consequence here, as the trademark law expressly requires cancellation of any
10 trademark registration for a term that is shown to be generic.  Therefore, as a
11 matter of law, Plaintiff's effort to prevent Defendants from using "red gold," a
12 generic name for a category of jewelry and watch products made of red gold,
13 should not proceed to trial.

14  For the same reasons, summary judgment should be granted in favor of
15 Hublot of America on its counterclaims:  (1) for a declaratory judgment of
16 invalidity of Plaintiff's alleged "red gold" trademark; and (2) for cancellation of
17 Plaintiff's U.S. trademark registration for RED GOLD.

18  This motion is limited to the issue of whether "red gold" is generic and
19 therefore invalid as a trademark.  If the Court grants this motion, this case will be
20 over and will not proceed to trial.

21                              **STATEMENT OF FACTS**

22  Due to space limitations and to avoid unneeded repetition, this Statement of
23 Facts only briefly summarizes an overwhelming volume of evidence submitted by
24 Defendants to show that the term "red gold" is, and has long been, a generic term
25 in the jewelry and watch industry.  Defendants detail this evidence fully in their
26 Statement of Uncontroverted Facts and Conclusions of Law ("SUF").  Reviewing
27 the SUF, the Court will see that the evidence includes over 900 pages of exhibits
28 taken from dictionaries, encyclopedias, third-party media references, product

catalogues, websites, industry blogs, and more showing "red gold" being used generically.  It also includes reference to the declarations of three expert witnesses one of whom is a jeweler and goldsmith and a former chairman of the Jewelry Design Department at the Fashion Institute of Technology in New York City, one of whom is the President and CEO of one of the premier jewelry industry trade groups in the United States, and the last of whom has worked in the fashion industry for more than 20 years, working heavily on branding in the jewelry and watch fields.  Each of these experts concludes unequivocally that "red gold" is a generic term for watches and jewelry made of a high copper content gold alloy, and two of them include voluminous documentary evidence in support of their opinions.

Additionally, the SUF cites to four supporting declarations from some of Defendants' competitor companies in the jewelry and watch industry.  Combined, these companies make and sell ten watch brands, many of which are household names such as Baume & Mercier, IWC, Montblanc, Panerai , Breitling, Omega and Blancpain.  Each of these four declarations not only provides detailed evidence of the various brands' own generic use of "red gold," but establishes the damage that would be done to the entire watch and jewelry industry if Plaintiff were allowed to monopolize the generic term red gold.

I.      **Historic and Current Use of the Term "Red Gold"**

Pure gold, in its unalloyed state, is not used in jewelry or watches because it is too soft and malleable.  (SUF ¶ 1.)  To be useful, pure gold must be mixed with another metal to form an alloy.  (SUF ¶ 1.)  Copper is one of the limited number of metals that are chemically capable of mixing with gold to form a more durable alloy.  (SUF ¶ 2.)  For example, yellow gold is an alloy of pure gold mixed with silver and a small amount of copper, and it has a yellow tint.  (SUF ¶ 3.)  Red gold is an alloy of pure gold mixed with a larger amount of copper.  (SUF ¶ 4.)  Red gold has a reddish-brown-yellow tint, which results from the addition of copper,

which is reddish-brown, to pure gold, which is yellow.  (SUF ¶ 5.)  In addition to yellow gold and red gold, other common types of gold alloy used in jewelry and watches are white gold, pink gold and green gold, which are all formed of pure gold alloyed with various other metals, such as copper, palladium, silver, and nickel in varying amounts, which metals give the gold its color.  (SUF ¶ 6.)  For example, pink gold, which is also known as rose gold, traditionally contains a smaller amount of copper than red gold, resulting in a lighter and pinker color than red gold.  (SUF ¶ 7.)

### A.    Historical Use of the Term "Red Gold"

The expert declaration of jeweler and goldsmith Anthony Lent, who is also the former chairman of the Jewelry Design Department at the Fashion Institute of Technology in New York City, narrates the long history of red gold.  (Declaration of Expert Witness Anthony Lent in Support of Defendants' and Counter-Claimant's Motion for Summary Judgment, Dec. 10, 2013 ("Lent Decl.").)  Historically, there is evidence of red gold alloys being used in Ancient Egypt in the fourteenth century B.C.E. and in Peru in the fourteenth century C.E.  (SUF ¶ 8.)  In the United States, numerous reference books have described the use of red gold in jewelry and watches, spanning the years 1869 to 2011.  (SUF ¶ 9.)  Some of these books are manuals and guides for jewelers and goldsmiths, such as *The Private Book of Useful Alloys and Memoranda for Goldsmiths, Jewellers, Etc.* (1872) and *Introduction to Precious Metals: Metallurgy for Jewelers & Silversmiths* (2009).  (SUF ¶ 9.)  Others are encyclopedias of general knowledge, such as *Cassell's Household Guide: Being a Complete Encyclopedia of Domestic and Social Economy, and Forming a Guide to Every Department of Practical Life* (1869) and *The Encyclopedia Americana: A Library of Universal Knowledge in Thirty Volumes* (1918).  (SUF ¶ 9.)  Each of them identifies red gold as an alloy composed of pure gold mixed with copper.  (SUF ¶ 9.)  The ratio of gold to copper

1   varies slightly among the sources, depending on the opinion of the author and on

2   the desired karat of the alloy.  (SUF ¶ 4.)

3          The use of the term "red gold" in the popular press in the United States is

4   documented as far back as 1884, when a newspaper article from Galveston, Texas,

5   captioned "Making Cheap Jewelry: The Modus Operandi of the Makers of Plate-

6   back Jewelry," reported that red gold is "simply an alloy of gold and copper….

7   Today gold is freely alloyed with copper, and produces an alloy that is of a rich red

8   color, and that is what you call red gold."  (SUF ¶ 10.)  Other historic uses of "red

9   gold" to refer to a high-copper-content gold alloy include an 1882 report of the

10  State Mineralogist of California, who included red gold on a list of the most

11  common gold alloys used in jewelry, and a 1913 issue of *The Metal Industry*

12  newsletter, which described red gold as one of the gold alloys that "have given to

13  the jewelry industry an impetus which otherwise could never have been realized,

14  owing to the beauty and variety of finishes available."  (SUF ¶ 11.)

15         Additionally, at least a dozen patents filed with the United States Patent and

16  Trademark Office between 1919 and 2009 use the term "red gold" to refer to a

17  gold alloy used for jewelry or watches.  (SUF ¶ 12.)  For example, a 1919 patent

18  application for a method of making a ring out of contrasting metals explains:  "For

19  instance, a ring can be supplied made of red gold and the frame made of white

20  gold."  (SUF ¶ 13.)  Similar uses of the term "red gold" appear in patent

21  applications filed from 1925 to 2009.  (SUF ¶ 12.)

22         **B.     Modern Use of the Term "Red Gold"**

23         The reference books and articles described above show that the term "red

24  gold" has been used consistently in the United States over at least the past 140

25  years as the name of a high-copper-content gold alloy incorporated into jewelry

26  and watches.  (SUF ¶¶ 4, 9-13.)  "Red gold" continues to be the common term used

27  in the United States for a high-copper-content gold alloy with a reddish tint.

28  Unlike in Europe, where jewelers must comply with professional standards for the

composition of gold alloys, including red gold, in the United States there are no specific standards for the composition of red gold or any other alloy, although some modern guidebooks refer U.S. jewelers to the European standards (e.g., for 18-karat red gold, 75% pure gold, 20.5% copper and 4.5% silver).  (SUF ¶ 14.) Regardless of the exact ratio of metals, a gold alloy that contains enough copper to give it a red-brown-yellow appearance is commonly called "red gold" in the jewelry industry, whether the color is a darker red-brown due to a higher concentration of copper or closer to yellow-orange due to a lower concentration of copper.  (SUF ¶ 15.)

### 1. Generic Use of "Red Gold" by Gold Refiners and Suppliers

U.S. gold refiners and suppliers that sell gold alloys to jewelry and watch manufacturers list red gold on their product lists, along with other gold alloys such as yellow gold and white gold.  (SUF ¶ 16.)  For example, Hoover & Strong, Inc., founded in 1912 in Buffalo, New York, has listed "red gold" on its product lists since at least as early as 1940.  (SUF ¶ 16.)  John C. Nordt Co., founded in 1872 in New York City has used the term "red gold" to refer to the red gold that it sells to jewelers and watchmakers.  (SUF ¶ 16.)  Other gold suppliers and refiners that have historically and currently used the term "red gold" to refer to red gold include David H. Fell & Company, Inc.  (SUF ¶ 16.)  Further, a well-known technical consultant to the gold supply and jewelry industry, PF Associates, LLC, headed by Paul Finelt, also lists red gold on its "Compilation of Precious Metal Alloys," alongside white gold, yellow gold and other alloys.  (SUF ¶ 17.)

### 2. Generic Use of "Red Gold" in the Jewelry and Watch Industry

In addition to Defendants' HUBLOT-branded watches, other examples of jewelry and watch brands and designers that have used the term "red gold" to identify their jewelry and/or watches made of red gold are Tiffany & Co., H. Stern, David Yurman, Hermès, Dior, Patek Phillipe, Tourneau, Omega, Blancpain,

Panerai, Baume & Mercier, Ulysse Nardin, Tacori, Frank Muller, Boucheron, Montblanc, Kobold, Breitling, Daniel Roth, Gerald Genta, Maîtres du Temps, Chronoswiss, Journe, Hemmerle, IWC, Giorgio Visconti, Alan Friedman, Federica Rettore, Glashütte, Bell & Ross, Cuervo y Sobrinos, De Grisogono, Corum, Dean Harris, Richard Mille, DeVille, Cruciani, Lucio del Pezzo, Arnaldo Pomodoro, Liz Tyler, Solange Azagury-Partridge, Rodney Rayner, Fabrizio Riva, Bijoux Coquette, Roberto Coin, Vhernier for Samuel Getz, Jaquet Droz, Stephen Vincent Lehman and Delaneau.  (SUF ¶ 18.)

Indeed, officers of four companies which, combined, make and sell ten watch brands have submitted declarations in support of this motion, showing their use of "red gold" to designate the gold alloy used in some of their watches.  (SUF ¶ 18; Declaration of Paolo Battistiol in Support of Defendants' and Counter-Claimant's Motion for Summary Judgment, Dec. 6, 2013 (watch brands Daniel Roth and Gerald Genta); Declaration of Michael Irilli in Support of Defendants' and Counter-Claimant's Motion for Summary Judgment, Dec. 13, 2013 (watch brands Baume & Mercier, IWC, Montblanc and Panerai); Declaration of Sebastien Amstutz in Support of Defendants' and Counter-Claimant's Motion for Summary Judgment, Dec. 11, 2013 (watch brand Breitling); Declaration of Frank Furlan in Support of Defendants' and Counter-Claimant's Motion for Summary Judgment, Nov. 26, 2013 (watch brands Omega, Blancpain and Jacquet Droz).

Moreover, it is common for companies that sell jewelry or watches made of red gold to include "red gold" as a product category on their websites, to help consumers find products made of their desired material.  For example, as described in the expert declaration of Laura Bjurstrom, the websites for the brands Omega, Blancpain, Panerai and Solange feature drop-down menus where consumers can search for products made of various materials, such as red gold, yellow gold, white gold, silver or diamonds.  (SUF ¶ 19.)  Similarly, the website for Defendant and Counter-Claimant Hublot of America features a drop-down menu where

consumers can search for watches that have cases made of red gold.  (SUF ¶ 20.)
Individuals and smaller companies in the United States who sell their jewelry on
the online marketplace Etsy.com also use "red gold" as the name of the material
used in their jewelry.  (SUF ¶ 21.)

A New York City art gallery even staged a recent exhibition devoted to
jewelry made of red gold.  (SUF ¶ 22.)  The exhibition, titled "Rebel Metal: Red
Gold," on view at the Aaron Faber Gallery in 2012, featured historical and
contemporary jewelry made of red gold.  (SUF ¶ 22.)  In an interview, the gallery
owner referred to the "wide popularity [of red gold in jewelry] in the mid-twentieth
century" and the "history of notable jewelry design [incorporating red gold] in the
past."  (SUF ¶ 22.)

### 3.    Generic Use of "Red Gold" in the Media

In addition to the newspaper article from 1884 mentioned above, modern
articles and advertisements in newspapers and magazines use the term "red gold"
to refer to jewelry or watches made of red gold.  (SUF ¶ 23.)  More than sixty-five
publications spanning the years 1967 to 2013 use the term "red gold" in connection
with jewelry or watches.  (SUF ¶ 23.)  These include issues of *Good
Housekeeping*, *New York Times*, *W*, *Vogue*, *Esquire*, *Forbes*, *Women's Wear Daily*,
*Los Angeles Magazine*, *Jewelers Circular Keystone*, and many others.  (SUF ¶ 23.)
Articles and blogs posted on the internet commonly use the term "red gold" to
refer to jewelry and watches made of a reddish colored gold alloy.  (SUF ¶ 24.)
"Red gold" is defined on the Oxford English Dictionary's U.S. website as "an alloy
of gold and copper" and in the online encyclopedia Wikipedia.com as "a gold and
copper alloy widely used for specialized jewelry."  (SUF ¶ 25.)   A search on
Google.com for "red gold jewelry" yields numerous hits that use the term "red
gold" as the name for the material out of which the jewelry is made.  (SUF ¶ 26.)
The term is further used in books about the commodities industry, books about the

1  California Gold Rush, scientific texts, and the popular novel by George R.R.

2  Martin *Game of Thrones*.  (SUF ¶ 27.)

3        Given the widespread historic and current use of "red gold" as the common

4  name for a high-copper-content gold alloy and for jewelry and watches made from

5  it, it is not surprising that the term appears on a list of generic terms compiled by

6  the Jewelers Vigilance Committee ("JVC"), a trade association whose mission is to

7  foster integrity in the precious metal gem and jewelry business through compliance

8  with applicable laws and regulations.  (SUF ¶ 28.)

9  **II.    Plaintiff's Alleged Trademark**

10        Against this backdrop enters Plaintiff, who claims that it has the

11  exclusive right to use the term "red gold" in connection with jewelry and watches.

12  (Complaint, Jan. 14, 2011, Dkt. No. 1 ("Compl."), ¶¶ 13, 22.)  Plaintiff owns U.S.

13  trademark Registration No. 2,793,987, registered with the United States Patent and

14  Trademark Office ("USPTO") on December 16, 2003, for the word mark RED

15  GOLD as used in connection with "Fine jewelry made of a special alloying of gold

16  with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets,

17  rings, anklets, cuff links, ornamental hair pins, belt buckles of precious metal, tie

18  clips and pegs, and earrings" in International Class 14.  (SUF ¶ 31; Compl. ¶ 2.)

19  On July 27, 2009, Plaintiff filed with the USPTO a declaration stating that it had

20  used the registered RED GOLD mark continuously for the preceding five years.

21  (SUF ¶ 32; *see* Compl. ¶ 2.)  As a result, pursuant to 15 U.S.C. § 1065, the

22  registration became "incontestable," meaning that the registration may be canceled

23  only on a limited number of grounds, but those grounds include that the registered

24  mark is a generic name.  15 U.S.C. § 1065(4) ("no incontestable right shall be

25  acquired in a mark which is the generic name for the goods or services or a portion

26  thereof, for which it is registered"); *see also* 15 U.S.C. § 1064(3) (permitting

27  "incontestable" registrations to be canceled at any time if the mark is the generic

28  name for the goods for which it is registered).

## III.   The Parties' Claims

Plaintiff has sued Defendants for trademark infringement, trademark dilution and violations of related state laws, based on Plaintiff's claim of exclusive rights in the term "red gold." (Compl. ¶ 1.)  The alleged conduct by Defendants giving rise to Plaintiff's suit is their use of the term "red gold" in connection with their sale of watches made of red gold. (Compl. ¶¶ 18-22.)

In its Complaint, Plaintiff also claimed trade dress rights in the "amber" color of its red gold jewelry and sought to prevent Defendants from selling jewelry or watches that incorporate the color of red gold, or any color similar to the "amber" hue of Plaintiff's jewelry. (Compl. ¶¶ 13, 22.)  Essentially, this would have prevented Defendants from using red gold alloy at all. (SUF ¶ 40.)  It was not until after Defendants notified Plaintiff of their intent to move for summary judgment that Plaintiff voluntarily abandoned its claim of rights in the color of its jewelry and dismissed all counts based on the alleged trade dress claim. (SUF ¶ 42.)

Counter-Claimant Hublot of America has asserted two counterclaims against Plaintiff:  (1) for a declaratory judgment of invalidity of Plaintiff's alleged "red gold" trademark; and (2) for cancellation of Plaintiff's U.S. trademark registration for RED GOLD.  (Defendants' First Amended Answer to Complaint and Counterclaims, May 11, 2011, Dkt. No. 33 ("Am. Answer"), ¶¶ 111-135.)  Hublot of America also had brought a counterclaim for a declaratory judgment of invalidity of Plaintiff's alleged trade dress in the color of red gold.  Hublot of America dismissed this counterclaim after Plaintiff dismissed all its claims based on its alleged color trade dress. (SUF ¶ 42.)

## PROCEDURAL HISTORY AND PARALLEL LAWSUITS

Plaintiff initially filed its lawsuit on September 22, 2010, against Defendants and seventeen other watch brands.  That action was instituted in this district as Civil Action No. 10-7079.  Ultimately, the action was divided into separate

1    lawsuits according to each defendant brand, and the cases were distributed among

2    the judges in this district.  Plaintiff's Complaint in the instant action was filed

3    January 14, 2011. (Dkt. No. 1.)

4        On April 25, 2011, Defendants filed their Amended Answer and

5    Counterclaims (Dkt. No. 27), and on June 30, 2011, Plaintiff filed its Second

6    Amended Answer to Amended Counterclaim (Dkt. No. 38).  On July 25, 2011, this

7    Court struck certain of Plaintiff's affirmative defenses to Defendants'

8    counterclaims.  (Dkt. No. 40).  The parties commenced discovery.

9        Meanwhile, the defendant in one of the parallel actions brought by Plaintiff,

10   *Solid 21, Inc. v. Breitling USA, Inc.*, 11-CV-0457 (GAF)(PLAx), 2011 WL

11   2938209 (C.D. Cal. July 19, 2011) (Feess, J.), filed a motion to dismiss Plaintiff's

12   claims under Fed. R. Civ. P. 12(b)(6) on the grounds, *inter alia*, that the term "red

13   gold" is generic.  The court found, based on the judicially noticeable facts

14   presented by Breitling, including some of the evidence submitted herewith, that the

15   term "red gold" is generic and unprotectable.  *See Solid 21, Inc. v. Breitling USA,*

16   *Inc.*, 11-CV-0457 (GAF)(PLAx), 2011 WL 2938209, at *4-5 (C.D. Cal. July 19,

17   2011).  With respect to Plaintiff's trademark registration, the court found that

18   Breitling had rebutted the presumption afforded by the registration "by pointing to

19   judicially noticeable evidence that 'red gold' is a generic term."  *Id.* at *5.

20   Therefore, the court dismissed with prejudice all of Plaintiff's claims based on

21   Breitling's alleged infringement of the "red gold" word mark.  *Id.* at *6.

22       Thereafter, Plaintiff appealed the district court's dismissal of claims based

23   on the "red gold" mark.  In a non-precedential memorandum opinion, the Ninth

24   Circuit reversed the dismissal and remanded the case on the ground that the district

25   court's reliance on the evidence submitted by Breitling to find that "red gold" is

26   generic was impermissible at the motion to dismiss stage, since the proper "inquiry

27   under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the

28   evidence."  *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 686-87 (9th

1    Cir. 2013).  Thus, the Court of Appeals reversed solely on procedural grounds, not

2    substantive.  *Id.*

3         While Plaintiff's appeal in *Breitling* was pending, this Court stayed this case

4    pending disposition of the appeal.  (Dkt. No. 44, Aug. 11, 2011.)  On April 2,

5    2013, the parties in this case filed a status report informing this Court of the Ninth

6    Circuit's decision in *Breitling*.  (Dkt. No. 46.)  On August 15, 2013, this Court

7    entered a Scheduling and Case Management Order for Jury Trial in this case.

8    (Dkt. No. 50.)  On October 17, 2013, the Court granted the parties' stipulation to

9    amend the scheduling order.  (Dkt. No. 56.)  The Court again granted the parties'

10   stipulation to amend the scheduling order on December 26, 2013.  (Dkt. No. 60.)

11        Through communications with Plaintiff's counsel and other counsel

12   representing some of the original defendants, Defendants' counsel has learned that

13   Plaintiff has arranged for tolling agreements and dismissed or is in the process of

14   dismissing all of the parallel cases against the other defendants without prejudice.

15   (SUF ¶ 41.)  It is clear that Plaintiff intends to test the validity of its rights in this

16   case and then continue its assault on the jewelry and watch industry should it

17   succeed in prosecuting its claims.  (SUF ¶ 41.)

18                                    **ARGUMENT**

19   **I.    LEGAL STANDARD**

20        Summary judgment is as appropriate in a trademark case as in any other.

21   *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).

22   To defeat this motion, Plaintiff cannot simply repeat the allegations in its

23   complaint or offer conclusory or unsupported assertions.  *See* Fed. R. Civ. P. 56(e);

24   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Further, the mere

25   existence of some alleged factual dispute between the parties will not defeat an

26   otherwise properly supported motion for summary judgment; the requirement is

27   that there be no *genuine* issue of *material* fact."  *Id.* at 247-48 (emphasis added).

28   Defendants' burden is discharged upon their showing that there is an absence of

1   evidence to support Plaintiff's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

2   325 (1986).  The burden then shifts to Plaintiff to provide more than enough

3   evidence to allow the jury to reasonably find for Plaintiff.  *See Matrix Motor Co. v.*

4   *Toyota Jidosha Kabushiki Kaisha,* 290 F. Supp. 2d 1083, 1087 (C.D. Cal. 2003).

5   **II.      PLAINTIFF'S ALLEGED TRADEMARK IS INVALID**

6          Plaintiff asserts claims for: (1) infringement of a registered trademark in

7   violation of the Lanham Act, 15 U.S.C. § 1114; (2) infringement of an unregistered

8   trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair

9   competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law

10  trademark infringement; (5) unfair competition under California's Unfair

11  Competition Law, Cal. Bus. & Prof. Code  § 17200; (6) trademark dilution in

12  violation of the Lanham Act, 15 U.S.C. § 1125(c); (7) false description in violation

13  of the Lanham Act, 15 U.S.C. § 1125(c); (8) trademark dilution in violation of Cal.

14  Bus. & Prof. Code  § 14200; and (9) declaratory relief.  A common element of all

15  of Plaintiff's claims is ownership of a valid mark.  *See HMH Publ'g Co. v.*

16  *Lambert*, 482 F.2d 595, 598 (9th Cir. 1973); *New W. Corp. v. NYM Co. of Cal.,*

17  *Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *Ford Motor Co. v. Ultra Coachbuilders,*

18  *Inc.*, 57 U.S.P.Q.2d 1356, 1359 (C.D. Cal. 2000) (federal trademark infringement

19  under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125,

20  common law trademark infringement and unfair competition under Cal. Bus. &

21  Prof. Code § 17200 *et seq.* all require the same analysis); *Visa Int'l Serv. Ass'n v.*

22  *JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010); *Levi Strauss & Co. v.*

23  *Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1167 & n.6 (9th Cir. 2011).  If

24  Plaintiff does not own a valid mark on which to base its claims, judgment must be

25  entered in favor of Defendants.  *See Japan Telecom, Inc. v. Japan Telecom Am.*

26  *Inc.*, 287 F.3d 866, 872 (9th Cir. 2002); *CG Roxane L.L.C. v. Fiji Water Co.*, 569

27  F. Supp. 2d 1019, 1030 (C.D. Cal. 2008).  Because Plaintiff's alleged mark, the

28

1   words "red gold," is not valid and protectable under the trademark law, summary

2   judgment should be granted to Defendants.

**A.      "Red Gold" Is the Generic Name of a Gold Alloy and Is Not a**
**Protectable Mark for Jewelry or Watches**

5       "A trademark is a word, symbol or device that identifies the source of goods

6   or services."  *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d

7   1070, 1080 (C.D. Cal. 1999).  A generic term is not protectable as a trademark.

8   *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979) *abrogated on*

9   *other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir.

10   2003).  "The crucial date for the determination of genericness is the date on which

11   the alleged infringer entered the market with the disputed mark or term."  *Yellow*

12   *Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th

13   Cir. 2005); *see also id.* (competitors "may use a term that was once distinctive if it

14   has become generic over time").  Here, the term "red gold" was generic for the

15   alloy red gold and for jewelry and watches made of this alloy not only before

16   Defendants began to use the term, but also long before Plaintiff's claimed date of

17   first use in 1989, and continues to be generic today.  (SUF ¶¶ 4, 9-29, 37-39.)

18       Courts in the Ninth Circuit apply the "who-are-you/what-are-you" test to

19   determine whether a mark is generic.  *Yellow Cab*, 419 F.3d at 929.  An

20   enforceable trademark answers *who* produced the good; a generic mark answers

21   *what* the good is.  *Id.*  Put another way, generic terms do not "relate exclusively to

22   the trademark owner's product" because they are common words or phrases that

23   "describe a class of goods rather than an individual product."  *New Kids on the*

24   *Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992); *see also*

25   *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) ("if the

26   primary significance of the trademark is to describe the *type of product* rather than

27   the *producer,* the trademark is a generic term and cannot be a valid trademark");

28   *Advertise.com, Inc. v. AOL Adver., Inc.*, 616 F.3d 974, 977 (9th Cir. 2010) (a

1  generic term "refer[s] to 'the genus of which the particular product or service is a

2  species,' i.e., the name of the product or service itself'").

3       In 2011, the district court handling Plaintiff's case against *Breitling* granted

4  Breitling's motion to dismiss Plaintiff's suit based on a holding that Plaintiff's

5  alleged "red gold" mark was generic and invalid.  *Solid 21*, 2011 WL 2938209, at

6  *3-6.  The court held that "judicially noticeable facts make clear that the 'Red

7  Gold' word mark answers the question 'what are you?' not 'who are you?' and

8  thus is generic and unprotectable."  *Id.* at *4.  Among the evidence submitted by

9  Breitling to show that "red gold" identifies "a type of gold that is alloyed with

10 copper to have a reddish hue" were "a scientific book, an article from the

11 *Metropolitan Museum Journal*, and an 1884 newspaper that refer to 'red gold.'"

12 *Id.*  The court also based its decision on the Oxford English Dictionary's definition

13 of "red gold" as "gold alloyed with copper."  *Id.*

14       The court thus held that Breitling had rebutted the presumption of validity

15 conferred by Plaintiff's trademark registration and had shown that "red gold" was

16 not a valid mark, and all of this was on a motion to dismiss.  *Id.*  The Ninth Circuit

17 reversed this holding, but only on procedural grounds that did not address whether

18 "red gold" is, in fact, generic.  *Solid 21*, 512 F. App'x at 685-87 (reversal because

19 Breitling's "attempt to introduce evidence to rebut the complaint" was

20 "impermissible at the motion to dismiss stage").  *Id.* at 686-87.

21       But the *Breitling* court got the substance of the case correct, and at the

22 summary judgment stage, courts are free to grant judgment on the issue of

23 genericness.  *See, e.g.*, *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 327 F.

24 App'x 723, 724 (9th Cir. 2009) (summary judgment based on finding that

25 ORGANIC FOOD BAR was generic); *Rudolph*, 482 F.3d at 1198 (summary

26 judgment based on finding that DISINFECTABLE was generic for nail files); *Self-

27 Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902,

28 911 (9th Cir. 1995) (summary judgment based on finding that SELF-

1   REALIZATION was generic for a spiritual organization).  Other marks that have

2   been found to be generic include KETTLE-COOKED for potato chips, BRICK

3   OVEN for pizza, LITE for beer, GOLD CARD for gold-colored credit cards, and

4   HONEY BROWN for ale.  *See Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468

5   F. Supp. 2d 1181, 1194 (C.D. Cal. 2007) (KETTLE-COOKED); *Schwan's IP,*

6   *L.L.C. v. Kraft Pizza Co.*, 460 F.3d 971, 973 (8th Cir. 2006) (BRICK OVEN);

7   *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80 (7th Cir. 1977)

8   (LITE); *Am. Express Co. v. Mastercard Int'l Inc.*, 685 F. Supp. 76, 78 (S.D.N.Y.

9   1988) (GOLD CARD); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137,

10  148 (2d Cir. 1997) (HONEY BROWN).

11  **B.   Plaintiff's Trademark Registration Does Not Preclude a Finding**

12  **That "Red Gold" Is Generic**

13       As the Ninth Circuit noted in *Breitling*, Plaintiff's trademark registration for

14  RED GOLD creates a "strong presumption" of validity of the mark and shifts the

15  burden to Defendants to show by a preponderance of the evidence that the mark is

16  not protectable.  *See Solid 21*, 512 F. App'x at 686 (citations omitted).  But the law

17  makes clear that this presumption, however strong, may be rebutted by Defendants

18  upon a showing that the mark is generic, and such a showing may be made on

19  summary judgment.  *See Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*,

20  601 F.2d 1011, 1020 (9th Cir. 1979) (summary judgment based on finding that

21  registered service mark, SURGICENTER, was generic in connection with services

22  rendered in an in-and-out surgical facility); *Retail Servs. Inc. v. Freebies Publ'g*,

23  364 F.3d 535, 548 (4th Cir. 2003) (summary judgment and cancellation of

24  trademark registration based on finding that registered and incontestable

25  trademark, FREEBIES, was generic in connection with magazines and newspapers

26  about mail order offering); *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d

27  397, 404-05 (6th Cir. 2002), *cert. denied*, 538 U.S. 907 (summary judgment based

28  on finding that registered and incontestable trademark, SMART POWER, was

1   generic in connection with electrical power circuits in combination with electrical

2   logic circuits); *Colt Def. L.L.C. v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 710

3   (1st Cir. 2007) (summary judgment and cancellation of trademark registration

4   based on finding that registered trademark, M4, was generic in connection with

5   firearms); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938-39

6   (7th Cir. 1986) (summary judgment based on finding that registered trademark,

7   LIQUID CONTROLS, was generic in connection with meters for measuring the

8   flow of liquids).

9        Indeed, the Lanham Act provides that a registered trademark may *always* be

10   challenged as invalid, and its registration canceled, on the grounds of genericness.

11   *See* 15 U.S.C. § 1065(4) ("no incontestable right shall be acquired in a mark which

12   is the generic name for the goods or services or a portion thereof, for which it is

13   registered"); 15 U.S.C. § 1064(3) (permitting cancellation of an incontestable

14   registration for a mark which is a generic name); *see also Retail Servs.*, 364 F.3d at

15   548 ("incontestability is never a shield for a mark that is generic").

16        Further, courts have made clear that they are not bound by the USPTO's

17   registration of a mark because the USPTO does "not have before it the great mass

18   of evidence which the parties have since presented to . . . court in support of their

19   claims." *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th

20   Cir. 1970). *See also Glassysbaby, L.L.C. v. Provide Gifts, Inc.*, 102 U.S.P.Q.2d

21   1155, 1157 (W.D. Wash. 2011) (finding trade dress generic on summary judgment

22   notwithstanding contrary decision by the USPTO, and holding that "the PTO's

23   finding [of non-genericness] is not supported by substantial evidence"). Therefore,

24   although Plaintiff is entitled to a presumption of validity in its word mark

25   registration, that presumption cannot save it from summary judgment. The

26   USPTO made a mistake allowing the mark to register, and the registration should

27   be canceled and Plaintiff's rights invalidated on summary judgment.

28

1   **C.   The Evidence Shows That "Red Gold" Is Generic**

2   Courts in the Ninth Circuit consider the following evidence in determining

3   that a term is generic:  (1) dictionary definitions; (2) use of the term in the industry;

4   (3) use of the term in the media; and (4) evidence that a monopoly over the term

5   would prevent others in the industry from calling their products what they are.  *See*

6   *Classic Foods*, 468 F. Supp. 2d at 1189 (industry and press use of a term is "strong

7   evidence of how the public perceives the term."); *Closed Loop Mktg., Inc. v.*

8   *Closed Loop Mktg., L.L.C.*, 589 F. Supp. 2d 1211, 1219 n.6 (E.D. Cal. 2008)

9   ("Significant use of a term by competitors in the industry has traditionally been

10  recognized as indicating genericness."); *Rudolph*, 482 F.3d at 1199 n.2

11  (DISINFECTABLE generic for nail files because protecting the mark would

12  "effectively grant the owner of the mark a monopoly, since a competitor could not

13  describe his goods as what they are"); *Miller Brewing*, 561 F.2d at 81 (LIGHT and

14  LITE generic for beer; "[o]therwise a manufacturer could remove a common

15  descriptive word from the public domain by investing his goods with an additional

16  quality, thus gaining the exclusive right to call his wine 'rose,' his whiskey

17  'blended,' or his bread 'white.'"); *Filipino Yellow Pages, Inc. v. Asian Journal*

18  *Publ'ns, Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999) (dictionary definitions "are

19  relevant and often persuasive in determining how a term is understood by the

20  consuming public, the ultimate test of whether a trademark is generic");

21  *Surgicenters*, 601 F.2d at 1015 n.11 (considering dictionary definitions).

22  Here, as set out above, the evidence presented by Defendants proves as a

23  matter of law that "red gold" is the generic name for a high-copper-content gold

24  alloy and for jewelry and watches made of this alloy, and that "red gold" was a

25  generic term long before Plaintiff's claimed date of first use in 1989, and continues

26  to be a generic term today.  (SUF ¶¶ 4, 9-29, 37-39.)

27

28

### 1.   Dictionary Definitions Show That "Red Gold" Is Generic

First, "red gold" is defined in the Oxford English Dictionary's U.S. website, the online encyclopedia Wikipedia.com, and in several jewelry dictionaries and encyclopedias as a high-copper-content gold alloy that is used in jewelry, further evidencing the generic nature of the term.  (SUF ¶¶ 4, 25.)  *See Filipino Yellow Pages*, 198 F.3d at 1148; *Surgicenters*, 601 F.2d at 1015 n.11.

### 2.   Use of the Term in the Jewelry and Watch Industry Shows That "Red Gold" Is Generic

Second, the evidence shows extensive references to the use of "red gold" in the jewelry and watch industry at all levels of the supply chain.  Starting with the companies that sell gold to jewelers and watchmakers, many gold alloy suppliers have listed "red gold" on their product lists since well before 1989 and as early as 1940.  (SUF ¶ 16.)  Numerous reference books directed to jewelers and watchmakers identify "red gold" as a type of gold alloy used in jewelry and watches, including at least eleven industry texts published before 1989 and as early as 1872.  (SUF ¶¶ 4, 9.)  Further, "red gold" has been used by numerous jewelers and watchmakers in their advertising and promotion identifying jewelry and watches made of red gold.  (SUF ¶¶ 18-19.)

"Red gold" has been used by well-known brands such as Tiffany & Co., H. Stern, David Yurman, Hermès, Dior, and Montblanc, among others, which sell their products through national and international distribution chains (SUF ¶¶ 18-19), by jewelers who sell their jewelry on the online marketplace Etsy (SUF ¶ 21), and by jewelers who exhibited their works in a special gallery exhibit devoted to red gold as a material (SUF ¶ 22).  These jewelers and watchmakers use "red gold" as a product category, in the same way that they use "yellow gold" or "white gold," to refer to the material used in the product.  (SUF ¶¶ 18-22.)  For example, many jewelry and watch companies include search features on their websites that allow consumers to search for products by material, e.g., red gold, white gold, yellow

gold. (SUF ¶¶ 19-20.)  Further, at least a dozen U.S. patents for inventions relating to jewelry or watches use the term "red gold" to refer to the gold alloy, including five patents filed before Plaintiff's claimed first use in December 1989.  (SUF ¶¶ 12-13.)  These sources show that the term "red gold" has been used in the jewelry and watch industry for centuries.  (SUF ¶¶ 4, 9, 16, 18-22.)  The evidence of industry usage here is more than sufficient to prove that "red gold" is a generic term on summary judgment, even though Plaintiff owns a trademark registration for the term.  *See Surgicenters*, 601 F.2d at 1020; *Retail Servs.*, 364 F.3d at 548; *Nartron*, 305 F.3d at 404-05; *Colt Def.*, 486 F.3d at 710; *Liquid Controls*, 802 F.2d at 938-39.  (*See* SUF ¶¶ 4, 9, 16, 18-22.)

### 3.  Use of the Term in the Media Shows That "Red Gold" Is Generic

Third, the evidence shows extensive use of the term "red gold" in the popular press from 1884 to the present.  (SUF ¶ 23.)  For example, in 1884 a Texas newspaper reported that red gold, an alloy of gold and copper, was used in jewelry.  (SUF ¶ 10.)  Also in the 1800s, encyclopedias of general knowledge, such as *Cassell's Household Guide* and *Chambers' Encyclopedia*, described the use of "red gold," a gold alloy, in jewelry and watches.  (SUF ¶¶ 4, 9.)  In 1967, *Good Housekeeping* magazine included "red gold" in its glossary of jewelry terms (SUF ¶¶ 4, 23), and advertisements in the *New York Times* in 1978 and 1986 refer to jewelry made of red gold (SUF ¶ 23).  Since 1989, the term has appeared in numerous advertisements and articles in national and regional newspapers such as the *New York Times* and *The Cincinnati Enquirer*, magazines such as *Esquire*, *Vogue* and *Elle*, fashion industry publications such as *Jewelers Circular Keystone* and *Women's Wear Daily*, books for the general public, student textbooks, books about the commodities industry and scientific publications.  (SUF ¶ 23.)  The volume of media usage confirms that "red gold" is a generic term.  *See Classic Foods*, 468 F. Supp. 2d at 1189.  (*See* SUF ¶ 23.)

4.   **"Red Gold" Is Generic Because a Monopoly over the Term Would Prevent Others in the Jewelry and Watch Industry from Calling Their Products What They Are**

Fourth, given the extensive use of "red gold" in connection with jewelry and watches over the centuries, granting Plaintiff exclusive rights in the term would prevent others in the industry from calling their products what they are.  Expert witness Anthony Lent opines:

> Based on my 40-plus years of experience in the jewelry industry, there is no question in my mind that were one company allowed to monopolize the generic designation "red gold," it would put every other jewelry company and watch making company at a competitive disadvantage, and those companies would be unable to convey to consumers when they were selling "red gold," i.e., gold mixed with a high copper content.  *It is as unfathomable to me as telling bakers that only one baking company may sell "whole-wheat" bread*….

(Lent Decl. ¶ 8 (emphasis added); *see also* SUF ¶ 38.)  It is therefore no surprise that the Jeweler's Vigilance Committee trade group includes "red gold" on its list of generic terms.  (SUF ¶ 28.)  The decision to include "red gold" in the JVC's database was made based on the organization's vast experience with various gold alloys and gold alloy jewelry since its formation in 1917.  (SUF ¶ 29.)  Cecilia Gardner, the President and CEO of the JVC, opines:

> I believe that the jewelry industry as a whole would be irreparably damaged should the plaintiff be allowed to monopolize the term "red gold".  This would put other jewelers who utilize red gold in their jewelry products at a distinct competitive disadvantage.  Without being able to accurately describe their products as "red gold," they would not be able to correctly identify the product they are selling, and it would be impossible to communicate the

1  precious metal content of the jewelry.  JVC encourages compliant, accurate

2  advertising by the jewelry industry….

3  (Declaration of Expert Witness Cecilia Gardner, Esq. in Support of Defendants'

4  and Counter-Claimant's Motion for Summary Judgment, Dec. 10 ("Gardner

5  Decl.") ¶¶ 14-15.)

6  Jewelers and watchmakers also have expressed that if they could not use the

7  term "red gold," they would not be able to accurately identify their products made

8  of this alloy.  (SUF ¶¶ 38-39.)  Officers of four companies that, combined, make

9  and sell ten watch brands have submitted declarations in support of this motion,

10  explaining that if they could not use the term "red gold," they would not be able to

11  identity their watches accurately.  (SUF ¶¶ 38-39; Battistiol Decl. ¶¶ 4-5 (watch

12  brands Daniel Roth and Gerald Genta); Irilli Decl. ¶¶ 10-11 (watch brands Baume

13  & Mercier, IWC, Montblanc and Panerai); Amstutz Decl. ¶¶ 10-11 (watch brand

14  Breitling); Furlan Decl. ¶¶ 13-14 (watch brands Omega, Blancpain and Jacquet

15  Droz).  This is further evidence that "red gold" is generic.  *See Rudolph*, 482 F.3d

16  at 1199 n.2; *Miller Brewing*, 561 F.2d at 81.

17  **III.  SUMMARY JUDGMENT SHOULD BE GRANTED TO HUBLOT OF**

18  **AMERICA ON ITS COUNTERCLAIMS**

19  Hublot of America's first counterclaim seeks a declaratory judgment of the

20  invalidity of Plaintiff's alleged RED GOLD mark.  The Declaratory Judgment Act

21  permits a federal court to "declare the rights and other legal relations" of parties to

22  "a case of actual controversy."  28 U.S.C. § 2201.  "[A]n action for a declaratory

23  judgment that a . . . trademark is invalid . . . presents a case or controversy if the

24  plaintiff has a real and reasonable apprehension that he will be subject to liability if

25  he continues to manufacture his product."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d

26  1151, 1157 (9th Cir. 2007) (internal quotation marks omitted).  Here, both the

27  threat of liability to Defendants and the invalidity of Plaintiff's alleged trademark

28  are obvious.  *See id.* at 1158-59.  The term "red gold" is generic, and therefore the

1  alleged trademark should be declared invalid.  (SUF ¶¶ 4, 9-29, 37-39.)  *See Anti-*
2  *Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 684 F.2d 1316, 1326 (9th Cir. 1982)
3  (registration is invalid if mark has become generic).

4       Defendants' second counterclaim seeks cancellation of Plaintiff's U.S.
5  trademark Registration No. 2,793,987 for RED GOLD.  Under section 37 of the
6  Lanham Act, 15 U.S.C. § 1119, and Ninth Circuit law, federal courts are
7  empowered to cancel registrations for trademarks found to be invalid and
8  unprotectable.  *See Gracie v. Gracie*, 217 F.3d 1060, 1065-66 (9th Cir. 2000);
9  *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984).
10  Moreover, an order cancelling a mark's registration may be issued on a motion for
11  summary judgment.  *See Sykes Lab., Inc. v. Kalvin*, 610 F. Supp. 849, 863 (C.D.
12  Cal. 1985); *Colt Def.*, 486 F.3d at 710 (cancelling registered trademark on
13  summary judgment based on finding of genericness).  As set forth *supra*,
14  Plaintiff's alleged RED GOLD mark is invalid because it is a generic term, and
15  therefore the registration should be canceled.

16                          **CONCLUSION**

17       For all the foregoing reasons, Plaintiff should not be granted a monopoly in
18  the generic name "red gold."  Therefore, summary judgment should be granted
19  dismissing Plaintiff's complaint in its entirety, granting judgment on Defendant
20  Hublot of America's counterclaims, canceling Plaintiff's trademark registration,
21  and granting such other and further relief as the Court deems just and proper.

22
23
24
25
26
27
28

Dated:  January 3, 2014          Respectfully submitted,
                                 YOUNGERMAN & McNUTT LLP
                                 Stephen Youngerman
                                 David A. Robinson
                                              -and-
                                 FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                 John P. Margiotta
                                 Anna P. Leipsic
                                 Jennifer Insley-Pruitt

                                 By: _____/s/ John Margiotta_____
                                        John P. Margiotta

                                 *Attorneys for Defendants LVMH Moet Hennessy*
                                 *Louis Vuitton, Inc. and  LVMH Watch & Jewelry*
                                 *USA, Inc. and Defendant and Counter-Claimant*
                                 *Hublot of America*

24

MEMORANDUM OF P&A IN SUPPORT OF DEFENDANTS
AND COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT