1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16

| SOLID 21, INC., | ) | Case No. CV 11-00468 DMG (JCx) |
| Plaintiff, | ) ) ) | **ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 63]** |
| v. | ) ) ) | |
| HUBLOT OF AMERICA, et al., | ) ) | |
| Defendants. | ) ) ) | |

17
18

     This matter is before the Court on the Motion for Summary Judgment filed by Defendants Hublot of America, LVMH Moet Hennessy Louis Vuitton SA, LVMH Moet Hennessy Louis Vuitton, Inc., LVMH Watch and Jewelry USA, Inc., on January 3, 2014. [Doc. # 63.]   On April 25, 2014, the Court held a hearing on the Motion.  The Court has duly considered the arguments and evidence presented in support of and in opposition to the Motion.   For the reasons discussed below, Defendants' Motion for Summary Judgment is **DENIED**.

## I.

## PROCEDURAL HISTORY

     On January 14, 2011, Plaintiff Solid 21, Inc. filed a complaint in this Court asserting claims against Defendants Hublot of America, LVMH Moet Hennessy Louis

Vuitton, Inc., LVMH Moet Hennessy Louis Vuitton, SA, and LVMH Watch, and Jewelry USA, Inc.  [Doc. # 1.]  This case is one of 14 related actions filed by Solid 21 in this Court.  [Doc. # 10.]

On March 11, 2011, Defendants filed an Answer and Defendant Hublot of America filed counterclaims, seeking:  (1) declaratory judgment as to the invalidity of the trademark; and (2) cancellation of Solid 21's trademark registration.  [Doc. # 78.]

On August 11, 2011, this Court stayed proceedings after a parallel case held, on a motion to dismiss, that Solid 21's registered trademark for "red gold" is invalid because "red gold" is generic.  *Solid 21, Inc. v. Breitling USA inc.*, No. 11-0457, 2011 WL 2938209 (C.D. Cal. July 19, 2011).  On March 19, 2013, the Ninth Circuit reversed the district court's decision in *Solid 21, Inc.*, holding that defendant's challenge to Solid 21's trademark as generic could not be resolved on a motion to dismiss.  *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 687 (9th Cir. 2013).

On January 3, 2014, Defendants filed a Motion for Summary Judgment as to all of Solid 21's claims and Defendants' counter-claims.  [Doc. # 63].  On January 27, 2014, Solid 21 filed an Opposition.  [Doc. # 90.]  On February 10, 2014, Defendants filed a Reply.  [Doc. # 109.]  On March 3, 2014, Solid 21 filed an opposition to Defendants' objections to its evidence.  [Doc. # 122.]

The operative First Amended Complaint ("FAC"), filed on January 13, 2014, asserts claims for:  (1) infringement of a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114; (2) infringement of an unregistered trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement; (5) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (7) false description in violation of the Lanham Act, 15 U.S.C. § 1125(a); (8) trademark

1
2

dilution in violation of Cal. Bus. & Prof. Code § 14330; and (9) declaratory relief.  [Doc. # 76.]  Defendants move for summary judgment on all claims.  (Mot. at 1 [Doc. # 63-1].)

**II.**

3
4

**FACTUAL BACKGROUND[1]**

5
6
7
8
9
10
11
12
13
14
15

In January 1996, Chris Aire started Solid 21, Inc.  (Declaration of Chris Aire ¶ 6 [Doc. # 89].)  Solid 21 owns U.S. Trademark Registration No. 2,793,987, registered on December 16, 2003 with the United States Patent and Trademark Office, for the word mark "red gold" as used in connection with "[f]ine [j]welry made of a special alloying of gold with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets, rings, anklets, cuff links . . . ."  (Declaration of Ryan D. Kashfian, Esq. ¶ 2, Exh. 1 [Doc. # 92-1].)  Defendants began using "red gold" in connection with gold watches "since at least as early as 2005."  (*Id.* ¶ 4, Exh. 3 [Doc. # 92-3].)  On August 21, 2009, the United States Patent and Trademark Office issued Solid 21 a certificate of incontestability for "red gold."  (*Id.* ¶ 3, Exh. 2 [Doc. 92-2].)

16

**A.     Evidentiary Disputes**

17

**1.     Solid 21's Objections to Declaration of John P. Margiotta, Esq.**

18
19
20
21
22
23
24

John P. Margiotta is a partner at the law firm of Fross, Zelnick, Lehrman, & Zissu, P.C., and counsel for Defendants.  (Declaration of John P. Margiotta, Esq. ¶ 14 [Doc. # 64].)  Attached to his declaration are examples of 12 patents for "red gold" jewelry or watches since 1919.  (*Id.* ¶¶ 2-14, Exh. 1-12.)  In addition, attached to the declaration are 61 articles published in the mainstream media or in jewelry trade journals from 1998 to 2013 that use the term "red gold" to refer to gold watches or jewelry.  (*Id.* ¶¶ 15-76, Exh. 13-73.)

25
26
27

Solid 21 objects that Margiotta's averments in his declaration are improper lay opinion evidence in violation of Federal Rule of Evidence 701(c).  It also objects that his

28

---

[1] The Court only addresses the parties' evidentiary objections to the extent they relate to material facts upon which the Court relies.   The facts set forth herein are undisputed unless otherwise noted.

-3-

declaration is irrelevant to consumers' view of the term "red gold" as generic.   Both objections are overruled.   The declaration is not submitted as evidence of Margiotta's opinion, but to authenticate the copies of the attached evidence.   The evidence of use of the term "red gold" in patents, the popular press, and the industry are all relevant to this Court's analysis of whether the term is generic.   *See Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (use of term in patents and industry); *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1012 (9th Cir. 1979) (considering use of term in media and industry); *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) (looking to use in media).

### 2.   Solid 21's Objections to Declarations of Individuals in the Watch Industry

Solid 21 next objects to the declarations of Sebastian Amstutz, Paolo Battistol, Frank Furlan, and Michael Irilli.   These individuals state that their respective employers have used the term "red gold" to describe gold watches and jewelry high in copper or with a reddish hue for "years," and currently use the term.   (Declaration of Sebastian Amstutz, ¶¶ 5, 9 Exh. 1 [Doc. 71] (Breitling has used the term "for many years" to sell gold watches and jewelry); Declaration of Paolo Battistol, ¶ 3 [Doc. # 70] (use by Bulgari since the 1940s); Declaration of Frank Furlan [Doc. # 66] (use by the Swatch Group in selling Omega, Jaquet Droz, and Blanpain watches in United States since at least 2000); Declaration of Michael Irilli ¶¶ 3, 5-6  [Doc. # 69] (use by Baume & Mercier, IWC, Montblanc, Jaeger-Lecoultre, Panerai, Cartier, Vacheron Constantin, Piaget of term "red gold" for "many years" to describe reddish-colored gold).)

Solid 21 objects that various portions of these declarations are irrelevant because they do not show how the consuming public views the term, citing *Filipino Yellow Pages, Inc.*, 198 F.3d at 1148 (the "ultimate test" of genericness is "how a term is understood by the consuming public").   Yet, on numerous occasions, the Ninth Circuit has looked to use

-4-

of the term in the industry to determine genericness.  *See, e.g.*, *Rudolph Int'l, Inc.*, 482 F.3d at 1198.  This objection is therefore overruled.

Solid 21 next asserts that the declarations contain opinion evidence by laypersons in violation of Federal Rule of Evidence 701(c).  The declarants' statements regarding use of the term "red gold" by their employer are based on their personal knowledge as managers at their respective places of employment.  Amstutz is in the position to testify that Breitling USA uses the term "red gold" to refer to its watches because he is Vice President of Finance and Administration at Breitling.  (Amstutz Decl. ¶ 4.)  He also has attached exhibits showing Breitling's use of the term on watches.  (*Id.* ¶ 6. Exh. 1.)  Similarly, Battistol has worked at Bulgari since 1986 and is currently the After Sales Senior Manager.  (Battistol Decl. ¶¶ 1-2.)  He has also attached evidence of Bulgari's use of the term.  (*Id.* ¶ 3, Exh. 1.)  Irilli is the Director of Digital and Business Development at Richemont North America, which distributes numerous brands of watches.  (Irilli Decl. ¶¶ 1-3.)  He attaches evidence of use of the term "red gold" to describe watches by various watchmakers that Richemont distributes.  (*Id.* ¶ 6, Exhs. 1-4.)  Finally, Furlan is President of the Swatch Group, where he has worked for 12 years.  (Furlan Decl. ¶ 4.)  Attached to Furlan's declaration is evidence of use of the term "red gold" by Swatch Group's various watch brands in the U.S.  (*Id.* ¶ 9, Exhs. 1-14.)  In sum, these witnesses attest to their employers' use of the term "red gold" based on their personal knowledge or their role as custodian of records.  Solid 21's objections are overruled.

### 3.   Solid 21's Objections to Declaration of Anthony Lent

Defendants provide the declaration of Anthony Lent as an expert in the meaning of the term "red gold" in the jewelry and watch industry.  (Declaration of Anthony Lent [Doc. # 65].)  Notwithstanding Solid 21's relevance objection, Lent's statement that "red gold" has "long been used in watchmaking" (*Id.* ¶ 63) is relevant to the use of the term in the industry.

Solid 21 also asserts that various portions of the Lent Declaration are improper under Rule 702(b) because his opinions are based on insufficient facts and data, and improper under Rule 702(d) because they apply unreliable principles and methods to the facts of the case.  Lent states that the term "red gold" has been used in the industry since 1869, and bases his opinion on citations to use of the term in trade dictionaries, books, encyclopedias, the popular press, and textbooks.  (*Id.* ¶¶ 11-55, Exh. 3-48.)  To the extent Solid 21 objects to this evidence under Rule 702, the objections are overruled because Lent's statements are based on evidence of actual use in the sources, which are attached to his declaration.

### 4.   <u>Solid 21's Objections to Declaration of Cecilia Gardner, Esq.</u>

Defendants submit a declaration by Cecilia Gardner, President and CEO of the Jewelers Vigilance Committee ("JVC"), a trade association.  (Declaration of Cecilia Gardner ¶¶ 1-2 [Doc. # 68].)  Gardner is also General Counsel to The World Diamond Council and the United States Kimberley Process Authority, industry associations, and is on the board of directors of Manufacturing Jewelers and Suppliers of America.  (*Id.*)  In relevant part, Gardner attests that JVC maintains a database of jewelry-related terms it regards as generic, a database it developed in 2011 at the behest of the U.S. Patent and Trademark Office.  (*Id.* ¶ 8.)  She states that the term "red gold" is listed in this database as generic, in part because the use of this gold alloy in jewelry and watches dates back to the JVC's formation in 1917.  (*Id.* ¶¶ 8, 10, 12.)

Solid 21 objects to this evidence based on relevancy.  This objection is overruled for the reasons previously stated regarding industry usage.  Solid 21 also objects to the evidence under Rule 702(a) as beyond the scope of Gardner's expertise.  This objection is overruled.  The statement is presented as evidence of the existence of the term in JVC's database, of which Gardner has personal knowledge through her position at JVC.

**5.**   **Solid 21's Objections to Declaration of Laura Bjurstrom**

Defendants also submit a declaration by Laura Bjurstrom, Executive Vice President/Creative Director for Haskell Jewels and Timepieces.   (Declaration Laura Bjurstrom ¶ 1 [Doc. # 67].)   Solid 21 objects that Bjurstrom is unqualified to testify regarding (1) the use of the term "red gold" in the jewelry and watch industry and (2) how a trademark on "red gold" would affect it. (*Id.* ¶¶ 8, 12, 13.)   "Reliable expert testimony need only be relevant . . . ."   *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).   "Non-scientific expert testimony's reliability depends heavily on the *knowledge and experience* of the expert."   *Hangarter*, 373 F.3d at 1017 (emphasis in the original). Bjurstrom's position of employment and over twenty years of experience in the industry establish her knowledge of the use of the term "red gold" in the industry.   (Bjurstrom Decl. ¶ 8.)   She also provides an extensive overview of the basis for her opinion.   (*Id.* ¶ 6, Exh. B.)   And she supports it with examples of the use of the term in the industry.   (*Id.* ¶ 15-37, Exh. C.)   Solid 21's objection is overruled.

**6.**   **Defendants' Attempt to Impeach Solid 21's Experts**

Defendants object to Solid 21's sole experts, Susan Eisen and Ronald R. Butters, pointing to inconsistencies in their declarations.   Eisen, who opines that the term "red gold" is "not a generic term used by the public to refer to a gold alloyed with copper giving the impression of a pink or orangish tint" (Declaration of Susan Eisen ¶ 4 [Doc. # 88]), nonetheless states on her website that "the 20th Century saw new formulas developed for both pink and *red gold alloys*," and "Bangle bracelets are back, and they come in several gold colors . . . including *red gold*, white gold and yellow gold." (Reply Margiotta Decl. ¶¶ 2-3, Exh. 2-3 [Doc. # 110] (emphasis added).)   Butters' declaration states that he searched Brigham Young University's online database project, "Corpus of American English," and failed to find any relevant uses of "red gold."   (Declaration of Ronald R. Butters, Ph.D. ¶¶ 42-46 [Doc. # 87].)   But one of the sources he cites refers to the use of red gold in watch making.   (*Id.* ¶ 43, fig. 9.)

Defendants' objections are overruled.  The fact that Solid 21's expert witnesses are subject to impeachment does not preclude the Court from considering their opinions upon a motion for the summary judgment.  *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Defendants also object to Butter's declaration for an additional reason, arguing that no Ninth Circuit decision regarding genericness of a trademark has ever relied on evidence by an expert linguist, particularly one who lacks expertise in jewelry or watches.  Solid 21 fails to point to such an instance, and the Court has found none.  Yet, Butter's declaration is relevant under well-settled Ninth Circuit law.  He opines on the use of "red gold" in "ordinary English," primarily drawing upon use, or lack of use, of the term in dictionaries.  (Butters Decl. ¶ 47(d)); *Filipino Yellow Pages, Inc.*, 198 F.3d at 1148 (the Ninth Circuit places "significant but not controlling weight on the dictionary definitions").  At least one other court has considered the testimony of an expert on language, in that case a lexicographer, to determine whether a term was generic.  *See Coca-Cola Co. v. Seven-Up Co.*, 497 F.2d 1351, 1353 (C.C.P.A. 1974).  Butter's declaration is admissible only as to his opinion as to dictionary definitions, not as to the ultimate issue of genericness.  Defendants' objections are overruled.

## 7. **Defendants' Objections to Solid 21's Ten Declarations by Previously Undisclosed Witnesses**

Defendants move to exclude the declarations of Donald Anderson, Kelly Trahan, Lucille Bilyeyev, Mary Davis, Orville Burrell, Tyson Beckford, Samuel Appiah, Jermaine Coleman, Aaron Goodwin, and Robert Filotei on the ground that Solid 21 did not disclose these witnesses as required under Rule 26 of the Federal Rules of Civil Procedure and therefore is barred from using their testimony under Rule 37(c).  [Doc. # 115.]

Federal Rule of Civil Procedure 26(a)(1) requires all parties to provide initial disclosures to the opposing party. "In general," such disclosures should be made at or within 14 days after the parties' Rule 26(f) conference, unless otherwise stipulated or ordered by the Court. Rule 26(e) requires the parties to supplement or correct their disclosures and discovery responses in a timely manner.

Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." This is the case "even absent a showing in the record of bad faith or willfulness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) sanctions are "self-executing" and "automatic," unless the there is a showing that the failure to disclose was "substantially justified or harmless." *Id.* (citing Fed. R. Civ. P. 37 advisory committee notes). Solid 21 does not dispute that it failed to properly disclose these individuals. Apparently embracing the theory that "two wrongs make a right," Solid 21 responds that "Defendants have themselves not produced any of the document[s] on which they bas[e] their summary judgment on in their own initial disclosures." (Pl's Opp'n to Def's Objections at 1 [Doc. # 122].)] In support of this proposition, Solid 21 cites Defendants' initial disclosures, attached as Exhibit A to their opposition, but fails to identify Defendants' shortcomings in any specific manner. (*Id.*)The Court's review of Defendants' disclosures of "documents" reveals four pages detailing the categories of documents that will be used. (*Id.* Exh. A pg. 18-22.) The Court cannot find that Defendants have also failed to properly disclose evidence under Rule 26.

The ten declarations at issue all describe the various declarants' long-time, personal relationship with Chris Aire and the declarants' recognition and association of the term "red gold" with his products, customer confusion, and/or Solid 21's marketing of Red Gold. (*See* Declarations of Donald Anderson [Doc. # 93], Kelly Trahan [Doc. #

94], Lucille Bilyeyev [Doc. # 95], Mary Davis [Doc. # 96], Orville Burrell [Doc. # 97], Tyson Beckford [Doc. # 98], Samuel Appiah [Doc. # 99], Jermaine Coleman [Doc. # 100], Aaron Goodwin [Doc. # 101], and Robert Filotei [Doc. # 102].)  This evidence from associates of Chris Aire goes to secondary meaning and thus Solid 21's *prima facie* case for trademark infringement.  Solid 21 should have known that evidence of secondary meaning would be pertinent before Defendants moved for summary judgment.

Solid 21's assertions that Defendants have not been prejudiced miss the mark. Disclosure of new fact witnesses at the time of summary judgment places the opposing party at a disadvantage and constitutes unfair surprise.  *See, e.g.*, *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 324 (C.D. Cal. 2004); *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1106 n.8 (C.D. Cal. 2007).  The use of the declarations of the new fact witnesses is thus impermissible under Rule 37(c).

Even assuming, *arguendo*, that Solid 21 could overcome the Rule 37(c) problem resulting from its failure to disclose, the declarations are irrelevant to the question of genericness because they are evidence of secondary meaning.  A "'generic' word cannot be validly registered as a trademark even if there is proof of secondary meaning." *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1016 (9th Cir. 1979) (quoting *CES Pub. Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2 Cir. 1975)); *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) (same); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1321 (11th Cir. 2012) (the prominent use of a generic term by two competitors may understandably confuse consumers; however, this does not make the term any less generic.); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) (same (collecting cases)).  Thus, evidence of consumer confusion and association is irrelevant to the Court's genericness inquiry.

Moreover, the challenged declarations are all from employees, former colleagues, or individuals who have known Aires for a "long time," and therefore the Court finds

-10-

them to be irrelevant for that additional reason.  (*See* Doc. ## 93-102.)    *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (evidence in opposition to summary adjudication did not raise a "genuine issue of material fact about genericness" because the evidence consisted of declarations by employees and wholesalers that they think of the plaintiff when they hear the allegedly generic term).  "Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark."  *Id.*; *see also Norm Thompson Outfitters, Inc. v. General Motors Corp.,* 448 F.2d 1293, 1297 (9th Cir. 1971) (same).

**B.**   **Undisputed Facts**

Both sides present voluminous evidence regarding whether "red gold" is a generic term.  The Court addresses this evidence in the context of its analysis below.

### III.

### STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "It is well settled that a non-moving party must present "more than a 'mere . . . scintilla of evidence' to defeat a motion for summary judgment." *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1019-20 (9th Cir. 2013) (*quoting Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011) (alteration in original) (quoting *Anderson*, 477 U.S. at 252). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## IV.

## DISCUSSION

Defendants' Motion for Summary Judgment rests on one overarching assertion: the term "red gold" is generic and therefore is not entitled to trademark protection. Each of Solid 21's causes of action hinges on its ownership of a protectable trademark and Defendants' alleged infringing use of the trademark in connection with their sale of "watches and jewelry items" made of red gold. (FAC ¶¶ 18, 25, 30, 36, 41, 45, 51, 58, 62; *see* 15 U.S.C. § 1114(1); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009) (to state a claim under 15 U.S.C. § 1114(1), plaintiff must prove ownership of a valid mark); 15 U.S.C. § 1125(a); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980) (test for claims under 15 U.S.C. § 1114 and 1125(a) are the same); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1153 (9th Cir. 2002) (dismissing claims under California's UCL as "substantially congruent" to claims under the Lanham Act) (internal quotation marks and citations omitted); *see also Filipino*

-12-

*Yellow Pages, Inc.*, 198 F.3d at 1145 (analyzing federal trademark infringement and unfair competition claims and related state law trademark claims together based on single question of genericness); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 n.9 (C.D. Cal. 2002) (standard under Lanham Act for trademark infringement and unfair competition is the same, and actions under California's UCL for state claims for trademark infringement and unfair competition are "substantially similar to comparable federal claims).

## A.   Defendants Bear the Burden of Proving the Registered Mark is Generic

"When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (citing *Filipino Yellow Pages, Inc.*, 198 F.3d at 1146). Solid 21's trademarking registration "entitles Solid 21 to a 'strong presumption' that the mark is not generic." *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 686 (9th Cir. 2013) (quoting *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010)). "The defendant may . . . overcome the presumption by a showing by a preponderance of the evidence that the term was or has become generic." *Yellow Cab Co. of Sacramento*, 419 F.3d at 928 (internal quotation marks and citations omitted); *see also Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x at 686 (the burden is on Defendant to show "by a preponderance of the evidence" that the mark is not protectable).

Although "the burden on the defendant necessary to overcome that presumption at summary judgment is heavy," *Zobmondo Entm't, LLC*, 602 F.3d at 1115, it is not insurmountable. *See*, *e.g.*, *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1196 (9th Cir. 2007) (affirming grant of summary judgment on basis term was generic); *Filipino Yellow Pages*, 198 F.3d at 1151 (same); *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1012 (9th Cir. 1979) (same, noting that there was

1   "nothing in the record to indicate that any potential customer considered the term" to

2   mean anything other than a surgical center).

3   **B.    The Ninth Circuit's Test for Genericness of a Trademark**

4          Trademark laws are designed with three goals in mind:  "(1) to protect consumers

5   from being misled as to the enterprise, or enterprises, from which the goods or services

6   emanate or with which they are associated; (2) to prevent an impairment of the value of

7   the enterprise which owns the trademark; and (3) to achieve these ends in a manner

8   consistent with the objectives of free competition."  *HMH Publishing Co. v. Brincat*, 504

9   F.2d 713, 716 (9th Cir. 1974).

10          To balance these objectives, trademarks are classified in one of five categories of

11   increasing distinctiveness:  (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5)

12   fanciful.   *Zobmondo Entm't, LLC*, 602 F.3d at 1113.   Marks that are suggestive,

13   arbitrary, or fanciful are entitled to automatic protection because they identify a product's

14   source.  *Yellow Cab Co. of Sacramento*, 419 F.3d at 927.   "[D]escriptive marks, which

15   describe the qualities or characteristics of a product, may be registered only if the holder

16   of the mark shows that the mark has acquired distinctiveness through secondary

17   meaning."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602

18   (9th Cir. 2005); *see also Zobmondo Entm't, LLC*, 602 F.3d at 1113 (descriptive marks

19   "are somewhere in-between" being automatically protectable or generic, thus they must

20   have "secondary meaning" to be protectable).

21

22          Finally, and most relevant here, are generic marks.  Generic marks are not capable

23   of protection "under any circumstances" because they identify the product, rather than the

24   product's source.  *Surgicenters of Am.*, 601 F.2d at 1014.   "Generic marks give the

25   general name of the product; they embrace an entire class of products."  *Yellow Cab Co.*

26   *of Sacramento*, 419 F.3d at 927 (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo*

27   *Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)).   A term is not generic if the

28   "significance of the term in the minds of the consuming public is not the product but the

producer." *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 302 (9th Cir. 1979).

The Ninth Circuit applies the "who-are-you/what-are-you" test. *Filipino Yellow Pages*, 198 F.3d at 1147. Under this test, "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you.'" *Id.*[2] (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)). "Whether a mark is generic is a question of fact." *Yellow Cab Co. of Sacramento*, 419 F.3d at 929 (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001)).

### 1.   Relevant Evidence and Time Frame

---

[2] To illustrate, "kettle" and "kettle chips" are generic as used for potato chips. *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1188, 1194 (C.D. Cal. 2007). "Disinfectable" is generic as used on nail files. *Rudolph Int'l, Inc.*, 482 F.3d at 1198. "Honey Brown" is generic for beer. *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 146 (2d Cir. 1997). "Lite" is also a generic category of beer. *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80–81 (7th Cir. 1977). "Brick Oven" is a generic category of pizza. *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 975 (8th Cir. 2006). [3] In a case such as this—where there is undisputed evidence of generic use of the term for decades before it was trademarked and no evidence of a non-generic meaning before the trademark holder entered the market—it is this Court's view that the more logical date for determining genericness should be the date the trademark holder entered the market with the trademarked term. *See Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1017 (9th Cir. 1979) ("To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are."); *see also Microsoft Corp. v. Lindows Com, Inc.*, No. 01-02115, 2004 WL 329250, *2 (W.D. Wash. Feb. 10, 2004) (holding that the Court "will instruct the jury to consider whether the Windows mark was generic during the period *before* Microsoft Windows 1.0 entered the marketplace in November 1985" (emphasis added)). There should be no incentive to trademark generic terms by holding out the possibility, however remote, that one's industry and expenditure of treasure could some day transform a generic term into one that is not. The Court is constrained by Ninth Circuit precedent, however, which squarely holds that the relevant date for determining genericness is the date the alleged infringer entered the market. *Yellow Cab Co. of Sacramento*, 419 F.3d at 928. Defendants have presented overwhelming evidence of genericness prior to the registration of Solid 21's trademark—sufficient to merit summary judgment if the relevant period was prior to the registration of Solid 21's 2003 trademark. Yet, as discussed further below, when the Court considers the evidence at the point when Defendants entered the market in 2005—although the evidence is quite lopsided in Defendants' favor—Solid 21 has submitted just enough evidence to pass muster and create a triable issue of disputed fact.

Federal courts look to a variety of sources of evidence to determine whether a term is generic and thus answers the question "what are you?" in the view of the consuming public. To determine the view of the consuming public, courts look to dictionaries; use of the term in the media; use of the term in the relevant industry, as evidenced by trade publications, trade organizations, and use by competitors; use by the plaintiff; and customer surveys. *Rudolph Int'l, Inc.*, 482 F.3d at 1198 (use of the term in the industry, including prior patents for the term); *Filipino Yellow Pages, Inc.*, 198 F.3d at 1148 (the Ninth Circuit places "significant but not controlling weight on the dictionary definitions"); *id.* at 1151 (use of term in the popular media); *Surgicenters of Am., Inc.*, 601 F.2d at 1013, 1017 n.17 (noting that the district court correctly found that the "consuming public" viewed the term generically, and looking to evidence of use of term in the media, trade publications, and by Department of Health, Education, and Welfare); *Classic Foods Intl Corp.*, 468 F. Supp. 2d at 1190 (usage of the term by competitors in the industry and media to determine consumers' view); THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:13 (4th ed. 2006) ("2 MCCARTHY") (stating that courts look to a plaintiff's own use, dictionary definitions, use by competitors, media usage, trade usage, and customer surveys).

Finally, under Ninth Circuit law, "[t]he crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Yellow Cab Co. of Sacramento*, 419 F.3d at 928. Accordingly, the Court looks to evidence in the record of dictionary, media, and industry use of the

term "red gold" for watches and jewelry at the time Defendants entered the market in 2005.[3]

2. **Genus**

In addition, the Court must determine the proper "genus" of goods for its analysis of the genericness of "red gold."  Generic terms are those that refer to 'the genus of which the particular product or service is a species.'"  *Advertise.com, Inc. v. AOL Adver., Inc.*, 616 F.3d 974, 977 (9th Cir. 2010).   Solid 21 asserts that the proper genus is "watches," while Defendants respond it is "jewelry."

Solid 21's evidence and First Amended Complaint do not distinguish between use of the term "red gold" on watches as opposed to in the jewelry industry generally.[4]  (*See*)

_____

[3] In a case such as this—where there is undisputed evidence of generic use of the term for decades before it was trademarked and no evidence of a non-generic meaning before the trademark holder entered the market—it is this Court's view that the more logical date for determining genericness should be the date the trademark holder entered the market with the trademarked term.  *See Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1017 (9th Cir. 1979) ("To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are."); *see also Microsoft Corp. v. Lindows Com, Inc.*, No. 01-02115, 2004 WL 329250, *2 (W.D. Wash. Feb. 10, 2004) (holding that the Court "will instruct the jury to consider whether the Windows mark was generic during the period *before* Microsoft Windows 1.0 entered the marketplace in November 1985" (emphasis added)).  There should be no incentive to trademark generic terms by holding out the possibility, however remote, that one's industry and expenditure of treasure could some day transform a generic term into one that is not.  The Court is constrained by Ninth Circuit precedent, however, which squarely holds that the relevant date for determining genericness is the date the alleged infringer entered the market.  *Yellow Cab Co. of Sacramento*, 419 F.3d at 928.  Defendants have presented overwhelming evidence of genericness prior to the registration of Solid 21's trademark—sufficient to merit summary judgment if the relevant period was prior to the registration of Solid 21's 2003 trademark.  Yet, as discussed further below, when the Court considers the evidence at the point when Defendants entered the market in 2005—although the evidence is quite lopsided in Defendants' favor—Solid 21 has submitted just enough evidence to pass muster and create a triable issue of disputed fact.

Solid 21's two expert witnesses, Butters and Eisen, base their opinions on the use of "red gold" in watches and jewelry.  (Eisen Decl. ¶ 16; Butters Decl. ¶ 1, 7.)  The declaration of Chris Aire contains pages of supporting documentation of use of the term "red gold" in connection with his jewelry.  (*See, e.g.*, Aire Decl. ¶ 64, Exh. 18, ¶ 68, Exh. 22 [Doc. # 89].  The FAC contends that Defendants infringed on Solid 21's trademark for "jewelry." (FAC ¶ 18 ("Defendants began selling, marketing and advertising *fine jewelry* utilizing the RED GOLD® mark.") (emphasis added).)[5]

On the record presented, the Court finds that the proper genus is jewelry, of which watches are a subset.

## C.   There is a Dispute of Material Fact Regarding the Genericness of "Red Gold"

### 1.   Use of "Red Gold" in Dictionaries

Under Ninth Circuit precedent, evidence of use of a term in dictionaries is given "significant but not controlling weight" in an analysis of genericness.  *Filipino Yellow Pages, Inc.*, 198 F.3d at 1148 (finding error in district court's reading of dictionary definition as "the crucial factor in assessing genericness"); *see also Rudolph Int'l, Inc.*, 482 F.3d at 1198.   The Ninth Circuit takes a "holistic approach to examining the genericness of composite terms," such as "red gold," and applies an "'anti-dissection

---

[4] Solid 21's trademark is for the term "red gold" as used in connection with "[f]ine jewelry made of a special alloying of gold with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets, rings, anklets, cuff links . . . ."  (Declaration of Ryan D. Kashfian ¶ 2, Exh. 1 [Doc. # 92-1]; Margiotta Reply Decl. ¶ 5 [Doc. # 11].)

[5] Solid 21 cites *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976), to argue that the proper genus is watches.  The Second Circuit determined that the term "safari" was generic as to some articles of clothing but not as to others.  *Id.* at 7, 11 (examining various separate trademarks for hats, shoes, and sporting goods).  The facts in *Abercrombie* materially differ from the case at bar.  Here, the question is whether "red gold" is generic as used to refer to gold jewelry, of which watches are a subset.  In contrast, in *Abercrombie*, the Second Circuit looked at a variety of trademarks for garments, which included trademarks for a subset of garments, such as shoes or hats.  *Id.* at 7.  This separation makes sense, as shoes are not a subset of hats.  Here, in contrast, red gold refers to a type of gold used on jewelry, and watches are a subset of jewelry.

rule' for evaluating the trademark validity of composite terms." *Filipino Yellow Pages, Inc.*, 198 F.3d at 1149-50 (declining to look at the individual words in a composite phrase individually).

The parties do not dispute that the composite term "red gold" is omitted from *The American Heritage Dictionary of the English Language*, 5th Ed.; the *Merriam-Webster Unabridged Dictionary*; and *The Merriam Webster New Collegiate Dictionary*. (Defendants' Response to Pl's Statement of Genuine Disputes of Fact ¶ 52 [Doc. # 113].) The parties also agree that the *New Oxford American Dictionary*, 3d., contains an entry for "red gold" (*id.* ¶ 53), but they dispute its significance.

According to Solid 21's expert, Ronald R. Butters, the term's presence in the *New Oxford American Dictionary* is likely an "historical accident," and is more appropriate for British English than American English. (Butters Decl. ¶ 47(d).) Butters states that aside from the *New Oxford American Dictionary*, the only other dictionary containing "red gold" is the *Oxford English Dictionary*, which he rejects as reflecting English as used in England. (*Id.* ¶ 30.) He notes that "red gold" once appeared in Webster's *New International Dictionary of the English Language*, 2d (1959), but next to the term was the word "archaic" and the definition was later dropped. (*Id.* ¶ 39.) Yet, Butters also admits that the *New Oxford American Dictionary* "is not at all consistent in its treatment of ADJECTIVE+*gold* terms, having no entry for *white gold, pink gold, rose gold,* or *green gold*." (*Id.* ¶ 29.)

Defendants point to Butters' admission that *New Oxford American Dictionary* was published in 2001, before Solid 21's trademark registration, and "was designed as a 'ground-up' dictionary based on American—not English—sources. (*Id.* ¶ 29.) Defendants also stress that courts often find genericness without a term appearing in a dictionary at all, citing *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938

(7th Cir. 1986) (collecting cases) and *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1327 (8th Cir. 1984).[6]

Inasmuch as a term's appearance in a dictionary is not dispositive of the term's genericness, the Court concludes that the evidence of the dictionary definition of "red gold" in some dictionaries but not others does not mandate summary judgment in favor of Defendants, who bear a heavy burden in this case.

### 2.   Use of "Red Gold" in Popular Media and Industry

To ascertain the views of the consuming public, courts also look to evidence of use of a term in the popular media and the relevant industry.  *See, e.g.*, *Filipino Yellow Pages, Inc.*, 198 F.3d at 1151; *Surgicenters of Am., Inc.*, 601 F.2d at 1017 n.17; *Classic Foods Int'l Corp.*, 468 F. Supp. 2d at 1190 (usage of the term by competitors in the industry); 2 MCCARTHY § 12:13 (competitors use, media usage, trade usage, and customer surveys).

### i.   Defendants' Evidence

Defendants proffer extensive evidence that the term "red gold" was generic as to jewelry and watches prior to 2005.[7]

At least 10 patents were filed with the United States Patent and Trademark Office from 1919 to 2003 that use the term "red gold" to refer to a type of gold used in jewelry or watches.  (*Id.* ¶¶ 2-14, Exh. 1-10.)

---

[6] Defendants also submit evidence that the term "red gold" is defined by Wikipedia under the entry "colored gold."  (Margiotta Decl. ¶ 87, Exh. 325.)  Solid 21 disputes the reliability of Wikipedia as a source.  Although Wikipedia may not be a reliable source as a definition of "red gold," the evidence is not admissible for that purpose.  The fact that the term appears there at all as an identifier of a category of gold alloy is some evidence of its usage in the vernacular.

[7] Defendants began using "red gold" in connection with gold watches "since at least as early as 2005."  (*Id.* ¶ 4, Exh. 3 [Doc. # 92-3].)  Therefore, the Court looks at evidence as of 2005.

Defendants submit eight articles published in United States trade journals, newspapers, and magazines from 1998 until the end of 2004 that use the term "red gold" to refer generically to a category of jewelry or watches made of a particular gold alloy. (Margiotta Decl. ¶¶ 16-23, Exhs. 13-23.)

Anthony Lent's declaration provides numerous examples of historical usage of the term "red gold" in the jewelry and watch industry since 1898 and continuing through the 1900s.   (Lent Decl. ¶ 15, *see also* ¶¶ 12-55 and accompanying exhibits).   In addition, Lent points to entries for "red gold" in over ten jewelry dictionaries, industry encyclopedias, and books on jewelry that predate 2005.   (*See, e.g.*, ¶¶ 11, 13-16, 18-19, 21-23, 52-53, 56; Exhs. 3, 5-8, 10-11, 13-14, and 51.)

Defendants also provide numerous declarations from managers of companies in the watch and jewelry business regarding their respective company's use of the term "red gold" prior to 2005.  According to the Furlan Declaration, the term was used before 2005 by Omega, Blacpain, and Jaquet Droz.  (Furlan Decl. ¶ 9, Exhs. 1-7.)[8]  Bulgari has used the term "red gold" for jewelry and watches since "at least as early as the 1940's." (Battistol Decl. ¶ 3).

Cecilia Gardner states that the Jewelers Vigilance Committee ("JVC"), a trade association asked to identify generic jewelry terms by the U.S. Patent and Trademark Office, lists "red gold" as a generic term.  (Gardner Decl. ¶¶ 8, 10, 12.)[9]

---

[8] As detailed above, Defendants also cite the declarations of Sebastian Amstutz and Michael Irilli, who represent other watch companies.  Both state that their watch companies, Richemont's numerous brands and Breitling, have used the term "red gold" for "many years," but they do not specify whether this use occurred before 2005.  (Irilli Decl. ¶ 5; Amstutz Decl. ¶ 5.)

[9] The JVC created the database with this list in 2011.  (Gardner Decl. ¶ 8.)  Gardner states that "this term has been generic since long before the [P]laintiff's claimed date of first use" and that JVC included the term in its list of generic terms "based on JVC's vast experience with various gold alloys and gold alloy jewelry and watches since JVC's formation in 1917 and my 15 years of experience in the jewelry industry."  (*Id.* ¶¶ 9, 10.)

-21-

Laura Bjurstrom asserts, based on her experience in the industry and evidence of historical as well as current use of the term, that "red gold" is a term used by "countless" jewelry and watch companies when describing various karat golds in a "reddish, warm color." (Bjurstrom Decl. ¶ 5.) She also attests and provides supporting documentation that watch brands Omega, Blancpain, Panerai, and Solange feature drop-down menus on their websites where customers can search for watches by type of gold, including red gold, yellow gold, and white gold. (*Id*. ¶¶ 15-22.)  It is unclear from the record when these brands began to use the term in their drop-down menus.

Finally, Defendants present evidence that Solid 21's own expert, Susan Eisen, who works in the jewelry and watch industry, uses the term "red gold" generically on her website in two places. (Margiotta Decl. ¶¶ 2-3, Exh. 2-3 [Doc. # 110].)  In addition, Solid 21's expert, Dr. Butters, cites evidence of generic use of the term "red gold," referring to watches, in 1992. (*Id.* ¶ 43, fig. 9.)

### ii.  Solid 21's Evidence

Solid 21's sole industry expert, Susan Eisen, is a "retail jewelry and watch retailer" located in El Paso. (Eisen Decl. ¶ 8.)  Having interacted with "approximately 150,000 watch and jewelry customers" over 34 years, she has never:

> bought or sold a watch or piece of jewelry described by the consumer as a 'red gold' watch piece or piece of jewelry.  Thus it is not a generic term used by the public to refer to a gold alloyed with copper giving the impression of a pinkish, or orangish tint.

(*Id.*)

Defendants respond that Eisen's declaration fails to contradict their evidence of the understanding of red gold as a generic term by the consuming public because she never denies that "red gold" is generic for a "high-copper-content gold alloy." (Reply at 17.) Asserting that "red gold" refers to gold with a "reddish" tint, Defendants claim that Eisen fails to contradict their evidence because she merely states that customers do not refer to

-22-

gold with a "pink or rose" color as "red gold."  (*Id.*)  Yet, the Court must draw all reasonable inferences from Eisen's statement in favor of Solid 21, the nonmoving party, and concludes that her statement evinces some support, albeit weak, for Solid 21's contention that consumers do not use the term "red gold" generically.

Solid 21 also submits a declaration from Chris Aire, owner of Solid 21, in opposition to summary judgment.  The Court looks to Aire's declaration only to the extent it serves to authenticate evidence of use of the term "red gold" in the media and jewelry industry.  Attached to the Aire declaration are eight instances before 2005 where the media or trade journals used the term "red gold" to refer to Aire's trademark rather than as a generic term.  (Chris Aire Decl. ¶¶ 48-49, 59-61, 63-64, 87; Exh. ¶¶ 2-3,13-15,17-18, 41 [Doc. # 89].)

### 3.   A Triable Issue of Fact Exists

Defendants' motion presents a very close question as to whether summary judgment is appropriate.  Nonetheless, viewing all of the evidence in the light most favorable to Solid 21, the Court concludes that the declarations of Butters and Eisen, along with the evidence of media usage of the term red gold in a non-generic manner before 2005, amount to slightly more than a "scintilla" and are therefore sufficient to create a triable issue of material fact regarding genericness.  Accordingly, Defendants' Motion for Summary Judgment is **DENIED** on the ground that a triable issue exists as to whether the term "red gold" is generic.[10]

## D.   Defendants' Evidence of the Consequences of a Trademark for "Red Gold"

Defendants assert that upholding Solid 21's trademark will give Solid 21 a monopoly on the sale of gold of a reddish hue.  They point to statements by Lent and

---

[10] The Court need not address Solid 21's arguments that "red gold" is suggestive or descriptive, as opposed to generic, because Defendants' summary judgment motion is based solely on the argument that "red gold" is generic.

Gardner that if one company were to monopolize the term "red gold," it would prevent other companies from telling their customers the nature of the product they are selling— i.e., that their gold is alloyed with a high copper content. (*See* Mot. at 21, citing Lent Decl. ¶ 8; Gardner Decl. ¶¶ 14-15.) Solid 21 responds that Defendants could use other terms to refer to the gold in question, such as "rose gold" or "pink gold." (Opp'n at 23.) Defendants counter that, as Aires himself admits, the term "red gold" is needed to market gold of a certain hue to men. (Reply 109; Mot. at 1-2; Aires Decl. ¶ 13.) They also emphasize that the availability of synonyms is irrelevant to determining whether a term is generic. 2 MCCARTHY 12:9 (collecting cases for the proposition that "[t]here is usually no one, single and exclusive generic name for a product.")[11]  Finally, Defendants assert

---

[11] Solid 21 argues that the Ninth Circuit holds that a trademark is not generic if there are "reasonably concise alternatives to describe the goods." (Opp'n at 32.) Solid 21 relies on *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996), where the Ninth Circuit held that the district court's finding that a term was "not the generic name" was "not clearly erroneous." *Id.* at 822. After asserting this conclusion, the court stated, "[i]t is not at all 'difficult to imagine another term of reasonable conciseness and clarity by which the public [could] refer[ ]' to these goods and services and their producer." *Id.* (quoting *Blinded Veterans Association v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1041 (D.C. Cir. 1989)). The Ninth Circuit does not appear to have repeated this proposition since. Moreover, the Court in *Blinded Veterans Association*, which *Yost* cites, held that the term was generic in part because it *was* difficult to find another term to describe the product, stating that:

> the test for genericness is whether the public perceives the term primarily as the designation of the article [citation]. "Blinded veterans" appears to fit that test. *It is difficult to imagine another term* of reasonable conciseness and clarity by which the public refers to former members of the armed forces who have lost their vision. Courts have found generic other terms that seem less distinctly apt denotations of their respective articles.

-24-

1  that red gold is an alloy different from pink or rose gold such that using the terms pink or

2  rose gold would not accurately describe their product.   Solid 21 disputes this.   (Pl's

3  Statement of Genuine Disputes of Material Fact ¶ 7 [Doc. # 104].)

4  　　　Regardless, Defendants fail to point to any decision where a court has granted

5  summary judgment on the basis of evidence of the risk of a monopoly by itself, let alone

6  where the Court has also determined that there is a triable issue of material fact as to

7  genericness.   And this Court's extensive search found none.   Where the Ninth Circuit has

8  mentioned the risk of granting a monopoly to one producer, it does so in the context of

9  describing the policy behind the principle that a generic term is not protectable under any

10  circumstances.   *See, e.g.*, *Surgicenters*, 601 F.2d at 1017 and *Rudolph Int'l, Inc.*, 482 F.3d

11  at 1199, both quoting *CES Pub. Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir.

12  1975) ("To allow trademark protection for generic terms, i.e., names which describe the

13  genus of goods being sold, even when these have become identified with a first user,

14  would grant the owner of the mark a monopoly, since a competitor could not describe his

15  goods as what they are").   That begs the question of whether the term is generic.

16  　　　Having concluded that there is a dispute of material fact as to genericness, the

17  Court **DENIES** Defendants' Motion for Summary Judgment.

18  

19  **E.**　　**Summary Judgment on Hublot's Counterclaims**

20  

---

21  872 F.2d at 1041.   Thus, contrary to what *Yost* appears to suggest, *Blinded Veterans Association* does

22  not hold that the presence of another reasonably concise term renders a term not generic—rather, in

23  *dicta*, it muses that *the absence* of a synonym may lend support to a finding of genericness.   In addition,

24  one of the only two cases this Court could find that has cited *Yost* for the proposition for which Solid 21

25  cites it, challenges its soundness in looking to the availability of other similar terms.   *Am. Online, Inc. v.

26  AT & T Corp.*, 64 F. Supp. 2d 549, 563 (E.D. Va. 1999) *aff'd in part, vacated in part*, 243 F.3d 812 (4th

27  Cir. 2001) (vacating district court's finding of genericness because of dispute of material fact); *but see

28  Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 519 F. Supp. 2d 1057,

1068 (E.D. Cal. 2007) (quoting *Yost*).   Finally, to hold that the existence of another term alone renders a

term not generic would be contrary to the tenant of trademark law that a generic term is never

protectable.   *Surgicenters*, 601 F.2d at 1014 (generic marks are not capable of protection "under any

circumstances"); *see also* 2 MCCARTHY 12:9 ("Any product may have many generic designations.

Any one of those is incapable of trademark significance . . . .").

Defendant Hublot of America has asserted two related counterclaims against Solid 21:  (1) declaratory judgment as to the invalidity of Solid 21's "red gold" trademark; and (2) cancellation of Solid 21's "red gold" trademark.  (Amended Answer ¶¶ 88-99 [Doc. # 78].)  Because the Court concludes that there exists a dispute of material fact regarding whether the "red gold" trademark is generic and therefore invalid, the Court **DENIES** Hublot of America's Motion for Summary Judgment as to its counterclaims.

## V.

## CONCLUSION

In light of the foregoing, Defendants' Motion for Summary Judgment is **DENIED**.

Within 10 days from the date of this Order, the parties shall submit a joint status report regarding new proposed dates for the final pretrial conference and trial.

**IT IS SO ORDERED.**

DATED:  September 29, 2014

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE